# In the United States Court of Federal Claims
## No. 13-719 C

### (E-Filed: June 8, 2016)

| | | |
|---|---|---|
| TIMOTHY J. HATMAKER, | ) | |
| | ) | |
| Plaintiff, | ) | Military Pay; Physical |
| | ) | Disability Board of Review |
| v. | ) | (PDBR); Motion for Judgment |
| | ) | on the Administrative Record; |
| THE UNITED STATES, | ) | RCFC 52.1 |
| | ) | |
| Defendant. | ) | |
| | ) | |

<u>Jason E. Perry</u>, Wellington, Fla., for plaintiff.

<u>Devin A. Wolak</u>, Trial Attorney, with whom were <u>Benjamin C. Mizer</u>, Principal Deputy Assistant Attorney General; <u>Robert E. Kirshman, Jr.</u>, Director; and <u>Steven J. Gillingham</u>, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant.  <u>Todi Carnes</u>, Attorney, U.S. Air Force Litigation Division, of counsel.

### OPINION and ORDER

CAMPBELL-SMITH, Chief Judge

This is a military pay case in which plaintiff, Timothy J. Hatmaker, seeks review of the decision of a physical disability board of review.  Mr. Hatmaker was separated from the United States Air Force in September 2007 after an Informal Physical Evaluation Board (PEB) found him medically unfit.  Mr. Hatmaker had one unfitting condition, vertigo, for which the PEB assigned him a disability rating of 10%.  The PEB found that Mr. Hatmaker had three other service related conditions, specifically, obsessive compulsive disorder (OCD), asthma, and obstructive sleep apnea.  But, the PEB did not find any of the three other service related conditions to be unfitting.

In May 2012, Mr. Hatmaker sought review of the PEB decision from the Department of Defense (DoD) Physical Disability Board of Review (PDBR).  In particular, Mr. Hatmaker sought an increase in his disability rating to at least 30%, and a recharacterization of his separation to retirement for disability.

In April 2013, the PDBR issued a decision in which it recommended no change to the 10% disability rating assigned by the PEB.  In September 2013, Mr. Hatmaker filed a complaint in this court seeking review of the PDBR's decision.  The parties filed cross-motions for judgment on the administrative record, and in July 2014, the court granted defendant's motion in part, and remanded the matter for additional review.  Hatmaker v. United States, 117 Fed. Cl. 560 (2014).

On remand, the PDBR issued a decision in January 2015 in which it found insufficient cause to recommend a change to the PEB disability rating.  AR 1014-24 (Remand PDBR).  Mr. Hatmaker now asks this court to review the decision of the Remand PDBR.

Pending before the court are the parties' cross-motions for judgment on the administrative record.  Both motions are ripe for consideration.  The court deemed oral argument unnecessary.  For the reasons explained below, plaintiff's motion for judgment on the administrative record is **DENIED**.  Defendant's cross-motion for judgment on the administrative record is **DENIED**.

As specified herein, this matter is **REMANDED** to the United States Department of Defense Physical Disability Board of Review for additional review.

I.      Background

The background for this matter was set forth previously in Hatmaker, 117 Fed. Cl. at 563-65.  For ease of reference, the court provides a summary of the relevant background here.

PEB Decision

On August 10, 2007, a PEB considered whether any of four conditions—vertigo, OCD, asthma, or obstructive sleep apnea requiring use of Continuous Positive Airway Pressure (CPAP)—rendered Mr. Hatmaker unfit for continued service.  AR 43.  The PEB found that only Mr. Hatmaker's vertigo was unfitting,[1] and assigned him a 10% disability

---

[1]      "A Service member shall be considered unfit when the evidence establishes that the member, due to physical disability, is unable to reasonably perform [his or her] duties . . . ."  DoDI 1332.38 ¶ E3.P3.2.1.

rating.  Id.  Mr. Hatmaker waived his right to a formal PEB hearing, AR 41, and he was medically separated from the Air Force on September 24, 2007, AR 151.

## VA Benefits

In early 2008, Mr. Hatmaker sought disability benefits from the Department of Veterans Affairs (VA).  In connection with his application, Mr. Hatmaker had several physical examinations, including a general medical examination on January 24, 2008, AR 181-233, and a psychiatric examination for his OCD on February 2, 2008, AR 171-180.

## PDBR Review

In September 2012, Mr. Hatmaker applied to the PDBR for a review of the August 2007 PEB decision.[2]  As provided in the implementing DoD instruction, the purpose of the PDBR is to "reassess the accuracy and fairness of the combined disability ratings assigned Service members who were discharged as unfit for continued military service by the Military Departments with a combined disability rating of 20 percent or less and were not found to be eligible for retirement."  DoDI 6040.44 ¶ 4.a, Lead DoD Component for the Physical Disability Board of Review (PDBR) (June 27, 2008, incorporating Change 1, June 2, 2009).  "The PDBR shall . . . impartially readjudicate cases upon which review is requested or [is] undertaken on its own motion."  Id. ¶ 4.b; see also Adams v. United States, 117 Fed. Cl. 628, 650-51, 665 (2014) (discussing de novo PDBR review); Silbaugh v. United States, 107 Fed. Cl. 143, 150 (2012) ("The PDBR reviewed plaintiff's case de novo." (citing DoDI 6040.44 ¶ 4.b)).  The PDBR may consider "such other evidence as may be presented."  10 U.S.C. § 1554a(c)(2) (2012); DoDI 6040.44 encl. 3 ¶ 5.a.(3).

Congress created the PDBR in response to concerns about the consistency, fairness, and accuracy of decisions assigning disability ratings of less than 30% (that is, a disability rating of no more than 20%).  See 10 U.S.C. § 1554a; see Cook v. United States, 123 Fed. Cl. 277, 300-02 (2015) (discussing PDBR congressional authorization); Martinez v. United States, 94 Fed. Cl. 176, 179 n.1 (2010) (discussing PDBR legislative history).  A service member with a disability rating of 30% or more will receive a disability retirement, while a service member with a disability rating of less than 30% will receive a disability separation.  See 10 U.S.C. § 1201(b)(3)(B).  The difference between the two is significant.  A disability separation entitles a service member to a one-time payment, while disability retirement provides monthly disability payments, medical care for life, and military commissary and exchange privileges.  See 10 U.S.C. §§

---

[2]    Application for a Review by the PDBR of the Rating Awarded Accompanying a Medical Separation from the Armed Forces of the United States, DD Form 294 (Jan. 2009), AR 8-20.

1201(a) (retirement), 1203(a) (separation), 1212 (severance pay), 1401 (retirement pay); see also Brass v. United States, 120 Fed. Cl. 157, 158 (2015).

PDBR review is available only to service members who received a disability separation of 20% or less between September 11, 2001 and December 31, 2009. 10 U.S.C. § 1554a(b). Seeking review from the PDBR is an alternative to seeking redress through a board for correction of military records ("correction board"), 10 U.S.C. § 1554a(c)(4), and as summarized in the application form for review (DD Form 294), there are differences between proceeding in the two forums, AR 10. When proceeding before a correction board, the former service member "has the burden of proof to establish error or injustice[, and] [t]here is a presumption of regularity." Id. In contrast, in proceeding before a PDBR, the former service member "need not allege anything, review [is] accomplished upon request." Id. A correction board will "correct errors in records and/or remove an injustice," while a PDBR will review the disability rating "for fairness and accuracy." Id.

The PDBR is authorized to make any of four recommendations to the Service Secretary, including: (1) no recharacterization of the separation or modification of the disability rating previously assigned such individual; (2) recharacterization of the separation to retirement for disability; (3) modification of the disability rating (but not a reduction); and (4) the issuance of a new disability rating for such individual. 10 U.S.C. § 1554a(d). The decision whether to accept the recommendation to recharacterize the separation or modify the disability rating rests with the Service Secretary. 10 U.S.C. § 1554a(e).

## First PDBR Decision

The PDBR issued its findings and recommendation on April 9, 2013. AR 3-7 ("first PDBR"). In relevant part, the first PDBR found that,

> [i]n the matter of the vertigo condition and [in accordance with] VASRD § 4.87 [code 6204], the Board unanimously recommends no change in the PEB adjudication. In the matter of the contended OCD, asthma, and [sleep apnea] conditions, the Board unanimously recommends no change from the PEB determinations as not [individually] unfitting.

AR 7. The first PDBR declined to consider whether the overall effect of Mr. Hatmaker's OCD, asthma, and obstructive sleep apnea was unfitting because it erroneously believed it lacked authority to conduct such a review. See AR 4. The first PDBR did consider whether Mr. Hatmaker's OCD, asthma, and obstructive sleep apnea were individually unfitting conditions, and found that none were. AR 6-7.

<u>The Court's Review of First PDBR Decision</u>

The court considered four objections from Mr. Hatmaker to the first PDBR decision.

> Mr. Hatmaker argues that the Board erred: (1) in not giving special consideration to the [Department of Veterans' Affairs disability] rating; (2) in not reviewing Mr. Hatmaker's disabilities for their overall effect on his fitness; (3) by not considering a rating of total disability based on his unemployability; and (4) by failing to award a 30 percent rating for his vertigo.

<u>Hatmaker</u>, 117 Fed. Cl. at 566.

The court found no error in the first PDBR decision regarding its consideration of either Mr. Hatmaker's DVA rating or his total disability rating. <u>See id.</u> at 569-71 (DVA rating), 575-78 (total disability).

But the court found that the first PDBR erred in declining to review Mr. Hatmaker's disabilities for their overall effect on his fitness, as it has the authority to conduct such review. <u>See id.</u> at 568 ("The Board erred in refusing to conduct an overall effect review of Mr. Hatmaker's disabilities, and that error may not be excused as harmless." (citing DoDI 6040.44, encl. 3 ¶ 5.e.(2)(b); DoDI 1332.38 ¶ E3.P3.4.4)). The court also found the offered explanation for the first PDBR's evaluation of Mr. Hatmaker's 10% disability rating for vertigo to be insufficient for effective judicial review. <u>See id.</u> at 571-75.

The court granted defendant's motion for judgment on the administrative record in part, and remanded for consideration of the overall effect of Mr. Hatmaker's OCD, asthma, and obstructive sleep apnea on his fitness, as well as further consideration of his vertigo—to include consideration of "all the relevant evidence in the record and . . . an explanation for its decision sufficient for this court to conduct a review, if necessary." <u>Id.</u> at 569.

<u>Remand PDBR Decision</u>

On January 29, 2015, the Remand PDBR issued its decision. AR 1014-1024. The Remand PDBR first considered the 10% disability rating for Mr. Hatmaker's vertigo. AR 1016-1021. In order to assign Mr. Hatmaker the 30% disability rating he seeks, the Remand PDBR would have had to find that the record supports findings of both dizziness and occasional staggering. <u>See</u> 38 C.F.R. § 4.87 (code 6204 Peripheral vestibular disorders). The Remand PDBR did recognize his dizziness condition, AR 1020, but found no evidence of occasional staggering, AR 1021. The Remand PDBR "concluded

that there was insufficient cause to recommend a change in the PEB adjudication for the vertigo condition." AR 1021. Thus, the Remand PDBR did not disturb Mr. Hatmaker's 10% disability rating for vertigo. AR 1023.

The Remand PDBR then considered whether the conditions that were not separately unfitting could be unfitting based on their overall effect. AR 1021-1023. Evaluating the overall effect of Mr. Hatmaker's OCD, asthma, and obstructive sleep apnea, the Remand PDBR found insufficient grounds for recommending that the combination of the three conditions rendered Mr. Hatmaker unfit for continued military service at the time of his separation. AR 1023.

<u>Plaintiff's Motion for Review of the Remand PDBR Decision</u>

Plaintiff filed a motion for judgment on the administrative record on April 23, 2015, alleging several errors in the Remand PDBR's decision. Pl.'s Mot., ECF No. 44. Defendant filed its cross-motion and response on June 3, 2015. Def.'s Mot., ECF No. 49. Mr. Hatmaker filed his response on June 26, 2015. Pl.'s Resp., ECF No. 50. Defendant filed its reply on July 9, 2015. Def.'s Reply, ECF No. 51.

The record in this matter includes both the administrative record defendant filed for review of the first PDBR decision, ECF No. 12 (AR 1-1013), and a supplemental filing for review of the Remand PDBR decision, ECF No. 41 (AR 1014-1085).

The cross-motions are now ripe for decision.

II.     Legal Standards

The court previously determined that it has jurisdiction over this matter. <u>See</u> <u>Hatmaker</u>, 117 Fed. Cl. at 565.

Rule 52.1(c) of the Rules of the United States Court of Federal Claims (RCFC) addresses motions for judgment on the administrative record. RCFC 52.1(c)(1) (providing that "a party may move for partial or other judgment on the administrative record"). A motion for judgment on the administrative record is "distinguish[able]" from a motion for summary judgment in that the material facts need not be undisputed. <u>Bannum, Inc. v. United States</u>, 404 F.3d 1346, 1355 (Fed. Cir. 2005).

Judicial review of a military review board decision is conducted under the same standard as any other agency action—that is, whether the decision is arbitrary, capricious, unsupported by substantial evidence, or contrary to law. <u>See</u> <u>Metz v. United States</u>, 466 F.3d 991, 998 (Fed. Cir. 2006); <u>see also</u> <u>Silbaugh</u>, 107 Fed. Cl. at 149 ("The court reviews the PDBR decision under a standard that is no more strict than the baseline deferential standard governing the decision of a correction board—the court 'will not

disturb the decision of the [board] unless it is arbitrary, capricious, contrary to law, or unsupported by substantial evidence."' (quoting <u>Barnick v. United States</u>, 591 F.3d 1372, 1377 (Fed. Cir. 2010)).

This deferential standard of review "does not require a reweighing of the evidence, but a determination [of] whether <u>the conclusion being reviewed</u> is supported by substantial evidence."  <u>Heisig v. United States</u>, 719 F.2d 1153, 1157 (Fed. Cir. 1983). "Under the 'arbitrary and capricious' standard . . . [t]he agency must articulate a 'rational connection between the facts found and the choice made.'"  <u>Bowman Transp., Inc. v. Arkansas–Best Freight System, Inc.</u>, 419 U.S. 281, 285-86 (1974) (quoting <u>Burlington Truck Lines v. United States</u>, 371 U.S. 156, 168 (1962)).

> Courts have found an agency's decision to be arbitrary and capricious when the agency "entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or [the decision] is so implausible that it could not be ascribed to a difference in view or the product of agency expertise."

<u>Ala. Aircraft Indus., Inc.-Birmingham v. United States</u>, 586 F.3d 1372, 1375 (Fed. Cir. 2009) (alteration in original) (quoting <u>Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.</u>, 463 U.S. 29, 43 (1983)).

"Under the substantial evidence rule, <u>all</u> of the competent evidence must be considered, whether original or supplemental, and whether or not it supports the challenged conclusion."  <u>Heisig</u>, 719 F.2d at 1157 (citing <u>Consolo v. Fed. Maritime Comm'n</u>, 383 U.S. 607, 620 (1966); <u>Universal Camera Corp. v. NLRB</u>, 340 U.S. 474, 483, 490 (1951)).  The Board's decision will comply with the substantial evidence standard so long as a "'reasonable mind might accept' [the] particular evidentiary record as 'adequate to support [the contested] conclusion.'"  <u>Dickinson v. Zurko</u>, 527 U.S. 150, 162 (1999) (quoting <u>Consol. Edison Co. of N.Y. v. NLRB</u>, 305 U.S. 197, 229 (1938)).

> If the record is inadequate, "[t]he reviewing court is not generally empowered to conduct a <u>de novo</u> inquiry into the matter being reviewed and to reach its own conclusions based on such an inquiry," and instead "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation."

<u>Walls v. United States</u>, 582 F.3d 1358, 1367 (Fed. Cir. 2009) (quoting <u>Fla. Power & Light Co. v. Lorion</u>, 470 U.S. 729, 744 (1985)).

III.     Discussion

The court considers, in turn, Mr. Hatmaker's objections to the Remand PDBR's decision regarding his vertigo and the overall effect of his three conditions.

A.     Vertigo

Mr. Hatmaker contends that the Remand PDBR "improperly rejected the probative value of [his] lay statements regarding his staggering." Pl.'s Mot. 8-9. Mr. Hatmaker asserts that the Remand PDBR erred in doing so, and for this and other reasons, the Remand PDBR's decision was arbitrary, capricious, contrary to law and regulation, and unsupported by the record.

Mr. Hatmaker adds that the Remand PDBR "erred by not giving proper consideration to the notes and documentation of [his] physicians, Dr. Athni and Dr. Doughten." Id. at 9. The notes to which Mr. Hatmaker refers include the doctors' notes of the symptoms he reported, AR 68, 100, and a summary observation by Dr. Doughten that Mr. Hatmaker's vertigo was a "fairly significant problem," AR 70. Although, the court considers the former reference in this discussion of Mr. Hatmaker's lay statements, the court does not view the latter reference to be relevant to its review of the Remand PDBR's decision regarding occasional staggering, and thus does not consider it.

Mr. Hatmaker made several statements to his treating physicians and healthcare providers—for the purpose of seeking either a medical diagnosis or treatment—indicating that he felt unbalanced, and that he was experiencing unsteadiness, staggering and difficulty walking. In evaluating whether the record showed support for a finding of occasional staggering, the Remand PDBR decided it would consider Mr. Hatmaker's "subjective reports of staggering," only if the record provided "objective confirmation" of those statements. Because the Remand PDBR determined that the record provided no such corroboration, the Remand PDBR declined to consider any of Mr. Hatmaker's statements.

As discussed below, the court finds that the Remand PDBR erred as a matter of law by applying an elevated evidentiary standard as it considered Mr. Hatmaker's statements, and thereby excluding those statements from consideration. Accordingly, this matter must be remanded for further consideration under the appropriate legal standard.

The court now reviews Mr. Hatmaker's statements, the authority governing the Remand PDBR, and the Remand PDBR's findings regarding whether Mr. Hatmaker exhibited occasional staggering. The court also considers additional allegations of error by Mr. Hatmaker.

1.      Mr. Hatmaker's Statements Made for Purposes of Either Medical
        Diagnosis or Treatment

The administrative record includes medical records from five appointments in which Mr. Hatmaker was either evaluated or treated for his vertigo. During each appointment, he described the symptoms he was experiencing. The relevant portions of those records are provided below.

During an initial neurological evaluation on May 23, 2007, Sudhir Athni, M.D. noted:

> [He] suddenly developed dizziness 6 weeks ago. The dizziness is described as a true vertigo, with the room spinning. He has difficulty standing and walking due to the dizziness. . . . The symptoms are almost constant, and are increased with head movement. Most of the time, he feels 'unsteady' instead of having true vertigo. . . . Since the vertigo started, he is having difficulty performing his work duties, mainly due to the staggering, and dizziness.

AR 323 (emphasis added).

During a follow-up visit on June 11, 2007, Dr. Athni remarked:

> Since the last visit [May 23, 2007], he has been using the Scopolamine Patch, which he finds very beneficial. His vertigo is completely resolved, with no dizziness, BUT, he continues to have unsteadiness and feels "off." His nausea is also much improved. He remains on short term leave from work.

AR 325 (capitalization in original; other emphasis added).

During a videonystagmorgraphy (VNG) test on July 5, 2007, the audiologist wrote: Mr. Hatmaker "[s]tates he continues to feel unsteady with no vertigo, has discontinued driving, [and] manages [his] symptoms with [a] scopolamine patch." AR 357 (emphasis added).

During an office visit on July 6, 2007, Mr. Hatmaker's general practitioner, Paul Doughten, M.D., made note: "He has had problems with his balance [nausea/vomiting] for 2 months. He continues to not drive (his girlfriend is driving him around) and has frequent feelings of N/V. At times he finds it difficult to walk." AR 347 (emphasis added).

During a VA compensation & pension (C&P) audio examination on January 24, 2008, the examiner wrote: "Veteran reports feeling unbalanced or dizzy nearly all the time." AR 166. "His symptoms include room spinning type dizziness occasionally with

an overall feeling of being unbalanced.  AR 167 (emphasis added).

        2.     Authority Governing the Operation of the Remand PDBR and Its Consideration of Evidence

A member's fitness for duty and eligibility for separation or retirement is governed by instructions or directives promulgated by the Secretary of the military department to which the member belongs.  10 U.S.C. § 1216 (2012).  For Air Force service members, Air Force Instruction (AFI) 36-3212 governs separation or retirement for disability.  See AFI 36-3212, Physical Evaluation for Retention, Retirement, and Separation (Sept. 30, 1999); see also AR 44 (August 2007 Air Force PEB proceeded under authority of AFI 36-3212).

According to AFI 36-3212, "[f]itness [d]eterminations . . . are the most important findings made by the PEB.  The standards and criteria for making this determination are in DoDD 1332.18, paragraph C."  AFI 36-3212 ¶ 3.16 (citing DoDD 1332.18, Separation or Retirement for Physical Disability (Nov. 4 1996)).  The relevant portion of DoDD 1332.18 is as follows.

> The standards for determining unfitness because of physical disability or medical disqualification and the compensability of unfitting disabilities shall be uniform among the Services and between components within an individual Service.  (See DoD Instruction 1332.38 (reference (e)).

DoDD 1332.18 ¶ C.7 (citing DoDI 1332.38, Physical Disability Evaluation (Nov. 14, 1996, incorporating Change 1, July 10, 2006)).[3]

The military evaluates service members for continued fitness to serve.  Upon a finding that a service member is unfit to do so, the military seeks to "ensure fair compensation to members whose military careers are cut short due to a service-incurred or service-aggravated physical disability," AFI 36-3212 ¶ 1.1.1, and to "assign[] a percentage rating to a medical defect or condition when the member is physically unfit for duty," id. ¶ 1.7.  The Air Force assigns disability ratings according to the VA Schedule for Rating Disabilities (VASRD).  Id. ¶ 1.7; see also 38 C.F.R. § 4.87 (VASRD).

The Remand PDBR is governed by procedures set forth in DoDI 6040.44, which provides that for every case referred to the PDBR, it shall "review the complete case

---

[3]    This instruction was cancelled on August 5, 2014.  See DoDI 1332.18 ¶ 1.c. (incorporating and canceling DoDI 1332.38).  However, the Remand PDBR properly considered DoDI 1332.38, as DoDI 6040.44 directs, the PDBR is to consider statutes and directives "in effect at the time of the contested separation."  DoDI 6040.44 encl. 3 ¶ 4.d.

record that served as the basis for the final Military Department PEB rating determination and, to the extent feasible, collect all the information necessary for competent review and recommendation." DoDI 6040.44 encl. 3 ¶ 5.d. (emphasis added). Further, DoDI 6040.44 provides that the PDBR shall use "all applicable statutes, and any directives in effect at the time of the contested separation (to the extent they do not conflict with the VASRD in effect at the time of the contested separation)." Id. ¶ 4.d.

The August 2007 PEB conducted its evaluation according to the procedures set forth in DoDI 1332.38. That particular instruction also addresses what evidence the PEB is to consider in its disability evaluation. The standards for determining unfitness due to physical disability or medical disqualification require the PEB to consider "[a]ll relevant[4] evidence . . . in assessing Service member fitness." DoDI 1332.38 ¶ E3.P3.3. "Findings about fitness or unfitness for Military Service shall be made on the basis of preponderance of the evidence. Thus, if a preponderance (that is, more than 50 percent) of the evidence indicates unfitness, a finding to that effect will be made." Id. ¶ E2.P3.6.2.

Hearsay evidence is permissible in an administrative proceeding. "It has long been settled . . . that hearsay evidence may be used in Board proceedings and may be accepted as preponderant evidence even without corroboration if, to a reasonable mind, the circumstances are such as to lend it credence." Kewley v. Dep't of Health & Human Servs., 153 F.3d 1357, 1364 (Fed. Cir. 1998) (citing Hayes v. Dep't of the Navy, 727 F.2d 1535, 1538 (Fed. Cir. 1984)); Werking v. United States, 4 Cl. Ct. 101, 106 (1983) (upholding a finding by a military board of corrections relying on hearsay evidence).

> In deciding whether particular hearsay evidence amounts to substantial evidence, we apply the same standard applied to all other evidence properly before an administrative agency. In any particular case, hearsay evidence can therefore be "substantial evidence" if it has sufficient probative force such that a reasonable man might accept it as adequate to support the conclusion reached by the agency. In seeing whether particular hearsay evidence is sufficiently probative, such hearsay evidence is to be evaluated relative to all the other evidence, including other hearsay, properly before the administrative agency. McKee v. United States, [500 F.2d 525, 528 (Ct. Cl. 1974)]; Reil v. United States, 456 F.2d 777 (Ct. Cl. 1972). This need for such evaluation necessarily means there exists no hard and fast rule as to when hearsay constitutes substantial evidence. Rather, this determination must be made on a case by case basis. Jacobowitz v. United States, 424 F.2d 555, 562 (Ct. Cl. 1970).

---

[4]     "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401.

Schaefer v. United States, 224 Ct. Cl. 541, 554-55 (1980) (emphasis added) (footnote omitted).

        3.     The Remand PDBR's Finding Regarding Occasional Staggering

Prior to its evaluation of the evidence, the Remand PDBR discussed whether it would consider Mr. Hatmaker's statements—which it termed "subjective reports of staggering," and which Mr. Hatmaker terms as "lay statements." The Remand PDBR wrote:

> With regards to the second 30% criterion, "occasional staggering", the [PDBR] members specifically considered whether reports of unsteadiness or difficulty walking constituted sufficient evidence in support of the criterion . . . . It is first noted that the VASRD does not provide a definition of staggering. Dictionary definitions (thefreedictionary.com, Merriam-Webster, Oxford) refer to it as unsteadiness during walking or on standing, or reeling from side-to-side (as in "tottering"). It is clear that, in contrast to dizziness, staggering is an objective, observable finding; and, members agreed that subjective reports of staggering in the absence of objective confirmation should not be conceded as the sole support for satisfying the criterion.

AR 1020-21 (emphasis added).

The Remand PDBR represented that it "carefully [had] scrutinized [the record] for objective or observed evidence of staggering." AR 1021 (emphasis added). The Remand PDBR discussed specific medical records during the period between May 23, 2007 and February 9, 2008, but it did not mention any of Mr. Hatmaker's statements during that time frame. Declining to make any changes to the 10% disability rating the PEB assigned to Mr. Hatmaker's vertigo, the Remand PDBR explained:

> In deliberating support for a 30% rating recommendation under [VASRD] 6304[5] criteria, members agreed that the PT evaluation on 16 July 2007[6] was an insufficient basis on which to conclude that occasional staggering was present, considering the vagueness of the gait description and the fact that multiple contemporaneous evaluations convincingly indicate the absence of staggering. . . . . [M]embers agreed that [post-separation evidence] did not

---

[5]     This is a typographical error; code 6304 does not exist. Mr. Hatmaker was evaluated under VASRD code 6204.

[6]     See infra part III.A.4.b. for a discussion of the July 16, 2007 physical therapy evaluation.

establish (to a sufficiently probative extent) that "occasional staggering" was present at the time of separation; and, it was therefore concluded that this requisite 30% criterion was not satisfied.

AR 1021 (footnotes added).

In defendant's view, the Remand PDBR was justified in its treatment of Mr. Hatmaker's statements. Defendant argues that DoDI 6040.44 "provides that PDBR review of conditions like Mr. Hatmaker's [is] governed by the VASRD," which in turn requires "objective" evidence to support a disability rating. Def.'s Mot. 20 (citing 38 C.F.R. § 4.87 (code 6204 Peripheral vestibular disorders)). Defendant, however, misses the mark.

DoDI 6040.44 points to the VASRD only for standards in determining the disability rating, nothing more. See DoDI 6040.44 encl. 3 ¶ 5.e ("The PDBR shall conduct reviews of the disability rating(s) of the covered individual in accordance with the VASRD in effect at the time of separation."). To establish a 30% disability rating for vertigo, the VASRD requires that Mr. Hatmaker show that he suffered from both dizziness and occasional staggering at separation. See 38 C.F.R. § 4.87 (code 6204). DoDI 6040.44 does not impose any additional requirement.

Defendant also misreads code 6204, which is silent about the evidence to be considered for either dizziness or occasional staggering. The VASRD text on which defendant relies is provided below in its entirety.

Note: Objective findings supporting the diagnosis of vestibular disequilibrium are required before a compensable evaluation can be assigned under this code. Hearing impairment or suppuration shall be separately rated and combined.

38 C.F.R. § 4.87 (code 6204) (emphasis added).

The note to which defendant adverts provides that "[o]bjective findings" are necessary to support a diagnosis of vestibular disequilibrium. Such findings are present in this case. The record shows that Mr. Hatmaker was diagnosed with vertigo by Dr. Athni "due to uncompensated unilateral vestibular weakness on the right, with a concurrent left posterior canal BPPV." AR 356. Dr. Athni's diagnosis was based on a videonystagmography (VNG) test performed by an audiologist on July 5, 2007. AR 357. Additionally, as plaintiff correctly points out, the PEB necessarily found that the record provided the requisite "objective findings" for Mr. Hatmaker's diagnosis, because it determined Mr. Hatmaker's vertigo was compensable and assigned him a 10% disability rating. Pl.'s Mot. 6-7 (citing AR 43). Neither DoDI 6040.44, nor the VASRD, provide defendant with any support for its position as to Mr. Hatmaker's statements to his treating

physicians and the need for objective corroborating evidence.

In the alternative, defendant argues that contrary to Mr. Hatmaker's assertions, the Remand PDBR did consider his statements in evaluating whether the record supported a finding of occasional staggering. Defendant explains: "[T]he PDBR did not disregard Mr. Hatmaker's 'lay statements.' . . . [Rather] it . . . found his self-reporting to be less credible than physician evaluations, due to the inherently subjective nature of self-reporting." Def.'s Mot. 20 (citing AR 1021). The Remand PDBR's awareness of Mr. Hatmaker's statements is reflected by the mention of his statements in the fact section of the Remand PDBR's decision. See AR 1016-19. Defendant's characterization of the Remand PDBR's consideration of Mr. Hatmaker's statements is otherwise misleading.

Defendant suggests that the Remand PDBR weighed the evidence, and simply accorded Mr. Hatmaker's statements less weight in its decision, as is proper with a fact finding. But a review of the Remand PDBR's decision shows no evidence of such weighing. The Remand PDBR never evaluated Mr. Hatmaker's statements or made findings about his reliability as a historian. Nor did the Remand PDBR discuss the view expressed by Mr. Hatmaker's various treating physicians that he was a reliable historian. See AR 508 ("Reliability of source of patient information was good" for January 2007 examination); AR 171 ("[Mr. Hatmaker] is felt to be a reliable historian for purposes of this examination" for February 2008 VA psychiatric examination); AR 195 ("good historian" for February 2008 VA general medical examination). In sum, the record does not support a finding that the Remand PDBR weighed Mr. Hatmaker's statements and ultimately discounted them based upon a finding that his statements were unreliable.

The Remand PDBR's decision indicates that Mr. Hatmaker's statements were categorically discounted, based solely on the type of evidence they represented rather than the content of the statements or the reliability of Mr. Hatmaker. Mr. Hatmaker's statements are undeniably hearsay evidence. As defined by the Federal Rules of Evidence, hearsay is a statement that "the declarant [did] not make while testifying at the current trial or hearing; and a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c).

It appears that the Remand PDBR effectively set an elevated standard for considering hearsay by requiring "objective confirmation." On finding such confirmation wanting, the Remand PDBR gave no credence to Mr. Hatmaker's statements.

Nothing about the hearsay nature of Mr. Hatmaker's statements, however, necessarily precluded the Remand PDBR from making findings based, either in whole or in part, on those statements. The caselaw teaches that hearsay statements, like Mr. Hatmaker's statements, may be sufficient to support a factual determination, regardless of whether the record includes other corroborating evidence. See supra part III.A.2.

14

In finding otherwise, the Remand PDBR missed the mark. "When the military is given unlimited discretion by Congress, it is nevertheless bound to follow its own procedural regulations if it chooses to implement some." Murphy v. United States, 993 F.2d 871, 873 (Fed. Cir. 1993). Under DoDI 6040.44 encl. 3 ¶ 5.d, the Remand PDBR was to "review the complete case record," and under DoDI 1332.38 ¶ E3.P3.3, it was to consider "[a]ll relevant evidence." Thus, the proper inquiry is whether Mr. Hatmaker's statements were relevant evidence for the PDBR to consider.

On remand, the PDBR examined the record before it to determine whether Mr. Hatmaker experienced occasional staggering at the time of his separation. Mr. Hatmaker repeatedly made statements to his treating physicians about his symptoms that tended to make the fact of his reported symptoms more probable. See Fed. R. Evid. 401. Mr. Hatmaker's lay statements are relevant evidence.

By establishing its own evidentiary standard for the consideration of hearsay statements, rather than considering all relevant evidence, the Remand PDBR erred as a matter of law. The impact of the error turns on whether or not it was harmless.

A harmless error analysis has applicability in military pay cases. See, e.g., Christian v. United States, 337 F.3d 1338, 1343 (Fed. Cir. 2003). But it is not proper to do so "[w]here the effect of an error on the outcome of a proceeding is unquantifiable," and the court would have to "speculate as to what the outcome might have been had the error not occurred." Wagner v. United States, 365 F.3d 1358, 1365 (Fed. Cir. 2004).

Such is the case here. The court does not, and cannot, speculate as to whether the Remand PDBR would have found that Mr. Hatmaker suffered from occasional staggering at the time of his separation, if it had properly considered all the relevant evidence in the record. See Fla. Power & Light Co., 470 U.S. at 744 ("The reviewing court is not generally empowered to conduct a de novo inquiry into the matter being reviewed and to reach its own conclusions based on such an inquiry."). Accordingly, the Remand PDBR's error may not be excused as harmless, and the court remands this matter to the United States Department of Defense Physical Disability Board of Review for additional review consistent with this opinion.

4.    Further Allegations of Error

Mr. Hatmaker argues that the Remand PDBR made additional errors in its evaluation of his occasional staggering. In order to provide as much clarity as possible to the PDBR on remand, the court considers these arguments by plaintiff.

a.    PEB Finding of Occasional Staggering

Plaintiff first argues that the August 2007 PEB decision contains a finding of

occasional staggering that the Remand PDBR failed to adopt.  Pl.'s Mot. 6-7 (citing AR 43).  The text of the PEB decision to which Mr. Hatmaker points is as follows.

> The Informal Physical Evaluation Board finds you unfit and recommends discharge with severance pay with a disability rating of 10% IAW Department of Defense and Veterans Administration Schedule for Rating Disabilities guidelines.  <u>The Board notes that your vertigo is completely resolved with no dizziness, but that you continue to have some unsteadiness</u>.

AR 43 (emphasis added).

Defendant insists that the PEB made no such finding.  Def.'s Mot. 16-17.

The court need not resolve this particular dispute between the parties because the January 2015 Remand PDBR decision, not the August 2007 PEB decision, is now on review.  The Remand PDBR issued its decision after conducting a de novo review of Mr. Hatmaker's record.  See supra part I. (PDBR Review).  Nothing in DoDI 6040.44 suggests that the Remand PDBR must conduct its review by deferring to earlier findings by the PEB.  Absent persuasive authority to the contrary, which plaintiff did not provide, the court need not—and does not—decide whether the PEB's note regarding unsteadiness in the 2007 decision amounts to a finding of fact.

### b.      The July 16, 2007 Physical Therapy Evaluation

Next, Mr. Hatmaker complains that the Remand PDBR mischaracterized a medical record in which a licensed physical therapist evaluated him for the purpose of treating his vertigo.  Pl.'s Mot. 7-8 (citing AR 353-55,[7] 1021).  On July 10, 2007, following a VNG test confirming a vestibular etiology for his vertigo, Dr. Athni referred Mr. Hatmaker for "Vestibular Therapy."  AR 356.

Mr. Hatmaker had an initial therapeutic evaluation on July 16, 2007, which included an assessment of seven different functional measures.  As to each of the functional measures, Mr. Hatmaker exhibited problems.  AR 353-55.  The portion of that evaluation pertaining to his balance and walking is included below in its entirety.

**Supine To/From Sit**
Current Level:          Independent - Using trapeze bar or bed rails – pivoting
Goal:                       Independent - Using abdominal muscles

**Sit To/From Stand**

---

[7]      Plaintiff cites to AR 52-54.  The court cites to a clearer copy of the same document at AR 353-55.

Current Level:          Independent - Using both hands with difficulty
Goal:                   Independent - No use of hands.

**Ambulation: Even Terrain**
Current Level:          No assistive device - Independent with difficulty;
          Distance:  180 Feet
Goal:                   No assistive device - Independent
          Distance: > 500 Feet

**Ambulation: Uneven Terrain**
Current Level:          No assistive device - Independent with difficulty
          Distance:  35 Feet
Goal:                   No assistive device - Independent – unlimited
          Distance:  Unlimited

AR 354-55.  In addition, Mr. Hatmaker was found to have "severe limitation[s]" in his tolerance of the independent activities of daily living, work activities, and recreation activities.  AR 355.  The physical therapist set Mr. Hatmaker's short-term goals as improving balance "by 50% in 2 weeks," and improving "[p]ostural control . . . in 2 weeks."  AR 355.

The Remand PDBR described the July 16, 2007 physical therapy record in two sections of its decision: first, in its review of Mr. Hatmaker's different medical records, AR 1018, and then, in its deliberation of the evidence pertaining to Mr. Hatmaker's occasional staggering, AR 1021.  The two sections of the decision are included below in their entirety.

At a physical therapy (PT) evaluation (an assessment for vertigo rehabilitation) on 16 July 2007, the CI[8] stated his dizziness had begun about two months previously (i.e., approximately May 2007).  [AR 355]  Prior to the onset of the vertigo, his functional status was described as "no . . . limitation in ambulation, IADL's (instrumental activities of daily living), work or recreation."  [AR 354]  The physical therapist made reference to "independent with difficulty" when walking 180 feet on even terrain and 35 feet on uneven terrain.  [AR 355]  There was no mention of stumbling, staggering, swaying, tottering, or falling; or of the need to use a handrail or assistive device for support.  There was also no mention of head movements (while walking) that could precipitate vertigo, such as looking up, down or to the side.  Likewise, there was no indication if a test such as the DixHallpike maneuver (which could precipitate vertigo symptoms) was performed prior to walking.  Regarding other parameters of functional measures, severe

---

[8]      Covered Individual is a reference to Mr. Hatmaker.

> limitations were noted for "specific IADL . . . specific work activity affecting performance . . . [and] . . . specific recreational activity affecting performance"; [AR 355] but, no "specific" limitations were actually described and it was not clear if these "functional measures" were based on a questionnaire or objectively assessed.  There was no mention of a plan to implement therapeutic maneuvers routinely recommended for benign positional vertigo (i.e. the Epley maneuver or particle repositioning maneuver ) or other causes of vertigo (i.e. vestibular rehabilitation therapy).

AR 1018 (footnote omitted; record citation added).

> There is only a single reference in the record to an observed gait that was not described as normal.  The PT evaluation on 16 July 2007 indicated the CI walked a specified distance "with difficulty" [AR 355] but did not provide any relevant details about what was observed or what the difficulty entailed.

. . . .

> In deliberating support for a 30% rating recommendation under 6[2]04 criteria, members agreed that the PT evaluation on 16 July 2007 was an insufficient basis on which to conclude that occasional staggering was present, considering the vagueness of the gait description and the fact that multiple contemporaneous evaluations convincingly indicate the absence of staggering.

AR 1021 (record citation added).

In its decision, the Remand PDBR noted that "a physical therapist did not conduct an evaluation or make an independent assessment of the vertigo condition, to include observation for any gait abnormalities."  AR 1021.  Mr. Hatmaker challenges that particular statement as incorrect because the physical therapist did perform that assessment during the July 16, 2007 visit.  Pl.'s Mot. 7-8 (citing AR 1021).

But plaintiff misreads the Remand PDBR's decision.  The Remand PDBR made that statement in characterizing plaintiff's February 2008 physical therapy records, AR 1061-62, 1064-66, not in characterizing the July 16, 2007 record, AR 353-55.  On review, the court finds that the Remand PDBR correctly described the February 2008 records.

The court does find other problems, however, with the Remand PDBR's consideration of the July 16, 2007 physical therapy evaluation.  First, in its description of this medical record, the Remand PDBR stated that "there was no indication [that] a test such as the DixHallpike maneuver (which could precipitate vertigo symptoms) was performed prior to walking."  AR 1018.

The Dix-Hallpike maneuver is a "test used to diagnose benign positional vertigo." *Maneuver (Dix-Hallpike)*, <u>Dorland's Illustrated Medical Dictionary</u> (32nd ed. 2012) (describing test in which the examiner physically manipulates the patient, and then "observes for positional nystagmus, which is indicative of benign positional vertigo"). To the extent that the Remand PDBR recognized that administration of the Dix-Hallpike maneuver could "precipitate vertigo symptoms," AR 1018, it was correct.

But what is unclear to the court is why the Remand PDBR engaged in speculation as to whether the physical therapist evaluating Mr. Hatmaker had administered a test that "could precipitate vertigo symptoms" before the therapist could observe Mr. Hatmaker's balance and walking. That test is used to <u>diagnose</u> vertigo. A review of the record shows that Mr. Hatmaker was administered the Hallpike maneuver, during his videonystagmorgraphy test on July 5, 2007. AR 357. The audiologist found the results of the maneuver "consistent with benign paroxysmal positional vertigo (BPPV) of left posterior canal," and provided those results to Dr. Athni. Mr. Hatmaker was diagnosed with vertigo by Dr. Athni on July 10, 2007, who then arranged the physical therapy referral to <u>treat</u> the vertiginous condition. AR 356. That referral led to Mr. Hatmaker's physical therapy evaluation six days later.

In its decision, the Remand PDBR cast doubt on the results of the physical therapy evaluation, that otherwise served to bolster Mr. Hatmaker's claim of occasional staggering. In determining that the physical therapy evaluation on July 16, 2007 was insufficient to support a finding of occasional staggering, the Remand PDBR relied on "multiple contemporaneous evaluations [that] convincingly indicate[d] the absence of staggering." AR 1021.

The record, however, does not include "multiple contemporaneous evaluations" of Mr. Hatmaker's balance and gait. Rather, the July 16, 2007 physical therapy evaluation is the sole record in which the two symptoms were evaluated. Other medical records include observations by treating physicians as to his normal gait. <u>See</u> AR 324 (May 23, 2007 neurology initial evaluation; normal gait); AR 325 (June 11, 2007 neurology follow-up; no indication of gait observation); AR 356 (July 10, 2007 neurology follow-up; no indication of gait observation); AR 195 (Jan. 24, 2008 VA general medical examination; normal gait).

Putting aside whether the records to which the Remand PDBR pointed were "evaluations" or not, the Remand PDBR appears to have required a showing of staggering, rather than occasional staggering. In its deliberation, the Remand PDBR correctly pointed out that the VASRD does not define the term staggering, AR 1020, before it consulted several dictionaries to define staggering "as unsteadiness during walking or on standing, or reeling from side-to-side (as in 'tottering')," AR 1020-21. The Remand PDBR reasonably interpreted the term staggering. But the Remand PDBR does

not appear to have considered what was necessary for a finding of "occasional staggering," or to have interpreted the term "occasional." The court finds that the three dictionaries on which the Remand PDBR relied to define staggering define the term "occasional" as either occurring from time to time, or infrequently or irregularly.[9]

In failing to consider what was required for a showing of "occasional staggering," and in dismissing the probative value of the results of the physical therapy evaluation, the Remand PDBR appears to have required a showing that is greater than was required for Mr. Hatmaker to establish his occasional staggering claim. A lack of evidence in the record of regular or constant staggering, however, is not the same as a lack of evidence of occasional staggering, and the latter is what the VASRD requires.

In dismissing the physical therapist's evaluation of Mr. Hatmaker's walking as "vague," AR 1021, the Remand PDBR suggested that Mr. Hatmaker could exhibit difficulty walking independently on both even and uneven terrain—as the physical therapist found he did— without also experiencing "unsteadiness during walking or [up]on standing, or [in] reeling from side-to-side (as in tottering),"—which symptoms the Remand PDBR deemed to be indicative of staggering.

The Remand PDBR did not provide its thinking on this point, and the court does not discern the distinction drawn by the Remand PDBR. The court will not disturb a decision—even if it is wanting in clarity—unless the court is unable to discern the agency's reasons for its decision. See Bowman Transp., Inc., 419 U.S. at 285-86 (citing Colo. Interstate Gas Co. v. Fed. Power Comm'n, 324 U.S. 581, 595 (1945) ("[W]e will uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned.")). The court is at a loss here to understand the reasoning of the Remand PDBR.

B.     The Overall Effect of OCD, Asthma, and Obstructive Sleep Apnea

Mr. Hatmaker next challenges the Remand PDBR's finding that the overall effect of his various conditions—OCD, asthma, and obstructive sleep apnea ("overall effect") —did not render him unfit. Pl.'s Mot. 10-12 (citing AR 1021-23). Defendant argues that Mr. Hatmaker has waived any argument as to whether his OCD was an unfitting condition, and thus he is precluded from arguing about the overall effect of his OCD, asthma, and obstructive sleep apnea. Def.'s Mot. 10-11. Defendant adds that Mr.

---

[9]     *Occasional*, Merriam-Webster's Collegiate Dictionary (11th ed. 2003) ("encountered, occurring, appearing, or taken at irregular or infrequent intervals"; *occasional*, Concise Oxford English Dictionary 989 (12th ed. 2011) ("occurring infrequently or irregularly"); *occasional*, Thefreedictionary.com, http://www.thefreedictionary.com/occasional (last visited June 6, 2016) ("[o]ccurring, encountered, done, or taken from time to time; irregular or infrequent.").

Hatmaker can show no error in the Remand PDBR's decision.  Id. at 11-12.

The court first considers defendant's waiver argument, and then plaintiff's challenge to the Remand PDBR's decision as to the overall effect of his three health conditions.

### 1.    Waiver of OCD Argument

Defendant asserts that plaintiff cannot argue that his OCD was an "individually unfitting condition" because Mr. Hatmaker failed to make this argument in his motion for review of the first PDBR decision, which issued on May 20, 2013.  Defendant reasons that a party waives any argument not offered in its opening brief.  Def.'s Mot. 10-11 (citing United States v. Ford Motor Co., 463 F.3d 1267, 1277 (Fed. Cir. 2006); Novosteel SA v. United States, 284 F.3d 1261, 1274 (Fed. Cir. 2002)).

It is true that Mr. Hatmaker made no such argument when the court reviewed the first PDBR decision issued on May 20, 2013.  See Hatmaker, 117 Fed. Cl. at 578; Pl.'s 1st Mot. JAR 18-34, ECF No. 16.  But the court does not review that PDBR decision again; rather it now reviews the Remand PDBR decision issued on January 29, 2015.  In reaching its decision, the Remand PDBR considered only those issues on remand from the court.  Whether Mr. Hatmaker's OCD was an individually unfitting condition was not among the issues the Remand PDBR considered.  See Hatmaker, 117 Fed. Cl. at 579 (remanding for further consideration of vertigo and the overall effect of his OCD, asthma and obstructive sleep apnea); AR 1016 (specifying that the PDBR's scope of review on remand was "confined to those issues specified by the court order").  As the court reviews only the Remand PDBR's decision, it does not consider the briefing filed by the parties regarding the first PDBR decision.

Here, the court reviews Mr. Hatmaker's claim that the overall effect of his OCD, asthma and sleep apnea is unfitting.  The pertinent instruction permits a service member to argue about the overall effect of various conditions only if the individual conditions were found not to be unfitting, such as Mr. Hatmaker's OCD, asthma, and obstructive sleep apnea.  See DoDI 1332.38 ¶ E3.P3.4.4.  Thus, the overall effect issue is different from the issue of whether Mr. Hatmaker's OCD was an individually unfitting condition.

Because the first PDBR declined to review the overall effect of Mr. Hatmaker's OCD, asthma, and obstructive sleep apnea, the court remanded the case to the PDBR for consideration of the issue.  See Hatmaker, 117 Fed. Cl. at 569.  The Remand PDBR's decision on the overall effect of Mr. Hatmaker's three conditions is the first on this issue.  As such, Mr. Hatmaker could not have waived argument by not addressing the subject in his earlier briefing.

2.      The Overall Effect of OCD, Asthma, and Obstructive Sleep Apnea

A service member may be found unfitting not only based on the effect of a single condition—such as vertigo in Mr. Hatmaker's case—but also based on the overall effect of two or more conditions.  The relevant instruction provides:

> A member may be determined unfit as a result of the overall effect of two or more impairments even though each of them, standing alone, would not cause the member to be referred into the [Disability Evaluation System] or [to] be found unfit because of physical disability.

DoDI 1332.38 ¶ E3.P3.4.4.

The Remand PDBR considered whether the overall effect of Mr. Hatmaker's OCD, asthma, and obstructive sleep apnea rendered him unfit for duty, and concluded that the three conditions in combination did not.  AR 1021-23.  Mr. Hatmaker does not object to the consideration given by the Remand PDBR to his asthma and his obstructive sleep apnea.  Rather, he argues that the Remand PDBR did not give proper consideration to the severity of his OCD.  Pl.'s Mot. 10-12.

Mr. Hatmaker was twice examined by a psychiatrist in connection with his OCD: first in June 2007 for his MEB, and later in February 2008 for his VA benefits.  AR 81-83 (MEB psychiatric examination); AR 171-80 (VA psychiatric examination).  The date of Mr. Hatmaker's separation, September 24, 2007, fell midway between these two psychiatric examinations.[10]  It is undisputed that Mr. Hatmaker's OCD deteriorated significantly during the eight months between the two examinations, such that by February 2008, the VA psychiatrist found that his OCD rendered him unemployable.  AR 176.  What is disputed is the timing of the onset of, and the expected duration of, this deterioration in Mr. Hatmaker's condition.

The Remand PDBR attributed the deterioration of Mr. Hatmaker's OCD to temporary post-transition stress.  AR 1023.  Because the Remand PDBR was tasked with determining whether the overall effect of certain health conditions—including Mr. Hatmaker's OCD—was unfitting at the time of service separation, it properly could have disregarded any post-separation changes in Mr. Hatmaker's condition.

But, Mr. Hatmaker alleges that the Remand PDBR erred in its decision.  Mr. Hatmaker argues that in evaluating the severity of his OCD before his separation, the Remand PDBR did not consider the evidence that showed "his driving was limited by his

---

[10]      The June 13, 2007 MEB psychiatric examination was 103 days (14 weeks 5 days) prior to Mr. Hatmaker's separation on September 24, 2007, while his February 2, 2008 VA psychiatric examination was 131 days (18 weeks 5 days) after his separation.

OCD." Pl.'s Mot. 10.  Mr. Hatmaker adds that by attributing the deterioration of his OCD to temporary post-transition stress, the Remand PDBR relied on "speculative findings about [his] OCD" rather than the record evidence showing that his OCD led to his unemployability.  Id. at 12.

The court considers plaintiff's arguments regarding his decision not to drive and his unemployability in turn.

> a.   The Decision Not to Drive

Plaintiff argues that the Remand PDBR failed to properly consider evidence that he discontinued driving due to the effects of his OCD.  Pl.'s Mot. 10-12.  According to plaintiff, when the Remand PDBR considered his vertigo, it attributed his decision not to drive to the effects of his OCD; but when the Remand PDBR considered his OCD, it attributed his decision not to drive to his vertigo.  Id. at 11.

Defendant responds that the Remand PDBR correctly interpreted the record by finding that it was Mr. Hatmaker's vertigo-related dizziness that precluded him from driving, not his OCD.  Def.'s Mot. 11.  Defendant adds that the Remand PDBR made reference in its decision to the checking behaviors Mr. Hatmaker described that interfered with his driving.  Id. (citing AR 1017-21).

The record does support the Remand PDBR's statement that "[f]rom the time of the VNG testing on 5 July 2007, the CI consistently informed providers that he was unable to drive due to his dizziness." AR 1020 (emphasis added); see also AR 77 (Commander's statement on June 13, 2007 that "a vertigo condition has limited [Mr. Hatmaker] from being able to drive."); AR 357 (July 5, 2007 VNG test during which Mr. Hatmaker reported "he continues to feel unsteady with no vertigo, [and] has discontinued driving."); AR 356 (July 10, 2007 neurology appointment at which Mr. Hatmaker reported he was "still unable to drive . . . [and] has not returned to work due to dizziness); AR 371 (July 27, 2007 note by family practitioner stating that Mr. Hatmaker "still continues with frequent vertigo episodes and he still does not want to drive."); AR 174 (February 2, 2008 note by the VA psychiatrist that Mr. Hatmaker "cannot drive with vertigo."); AR 1069 (March 10, 2008 VA audiometric examination note that Mr. Hatmaker "is not able to drive due to his dizziness.").

In its decision, the Remand PDBR considered both Mr. Hatmaker's election not to drive and his dizziness.  The Remand PDBR recognized that the record contained "conflicting evidence" regarding the "frequency and severity of [his] dizziness;" yet the Remand PDBR found that Mr. Hatmaker's dizziness was more than occasional.  AR 1020.  Concluding that Mr. Hatmaker suffered from dizziness at the time of his separation, the Remand PDBR found that he met this 30% disability rating criterion.  AR 1020.

Also in the record are Mr. Hatmaker's reports that his OCD manifested as checking behaviors while he was driving and caused him to retrace his course. Reflected specifically in the history section of the June 13, 2007 MEB psychiatric examination are Mr. Hatmaker's "mild obsessions about . . . causing injury with his car, with resultant checking compulsions . . . [but] not significantly interfering with . . . [his] driving habits." See AR 81 (emphasis added). Subsequently, at his February 2, 2008 examination, the VA psychiatrist noted that Mr. Hatmaker "stops his car and goes back to try to check and see that he did not damage anything in the road." AR 177.

Contrary to plaintiff's assertions, the record supports the Remand PDBR's findings. Thus, the court finds no error in the Remand PDBR's consideration of Mr. Hatmaker's decision not to drive.

b.    Unemployability

The VA psychiatrist found that Mr. Hatmaker's "contention that he is currently unemployed due to the effects of a mental disorder" was "supported by the [recorded] diagnoses and findings." AR 176. The phsyciatrist also found that Mr. Hatmaker's "impairments and behaviors became evident to those around him on active duty and resulted in poor performance reports." AR 177. The VA psychiatrist opined that "[t]he prognosis for improvement in [Mr. Hatmaker's] condition [was] guarded." AR 179.

The Remand PDBR did not question the VA psychiatrist's determination as to the severity of Mr. Hatmaker's OCD. See AR 1023 (stating, without disagreement, that the "post-separation VA psychiatrist opined that [Mr. Hatmaker] was unemployed due to OCD at the time"). Rather, the Remand PDBR contended that Mr. Hatmaker's condition in February 2008 could not stand as a reliable proxy for his condition in September 2007:

> [T]he post-separation VA psychiatrist opined that [Mr. Hatmaker] was unemployed due to OCD in [February 2008]. Members agreed, however, that this cannot be construed as a reliable marker of occupational functioning at the time of [his] separation [in September 2007]; since, the stress of transition to civilian life often imposes stressors that may temporarily exacerbate a mental health condition.

AR 1023 (emphasis added). By attributing Mr. Hatmaker's deterioration to the temporary "stress of transition to civilian life," the Remand PDBR found that the onset of the deterioration began only after his separation.

Mr. Hatmaker complains that the Remand PDBR failed to consider evidence that the worsening of his OCD was not merely temporary, but permanent. Pl.'s Mot. 12-13. And if the worsening of his condition was not a temporary response to his transition to

civilian life, then it follows that the onset of the deterioration may not have been <u>entirely</u> a post-separation process.

Mr. Hatmaker argues that the Remand PDBR erred by making a "speculative finding that the 'transition' to civilian life temporarily exacerbated [his] OCD, without considering that the record evidence shows that his OCD had been chronic and severe and had kept him from working since 2007." Id. Part of the relevant record evidence is a letter written in January 2010 by Mr. Hatmaker's family physician, Jose Malagon (2010 Malagon letter), addressing the persistence of his unemployability due to the overall effect of several health conditions, including his OCD. Mr. Hatmaker's unemployability also was addressed during a 2008 VA psychiatric examination, and the exacerbation of his OCD symptoms was noted during the 2007 MEB psychiatric examination. But, the Remand PDBR "did not weigh or comment on" any of this evidence. Id. at 12.

i.      Failure to Consider the 2010 Malagon Letter

On January 21, 2010, Dr. Malagon, opined that Mr. Hatmaker had been unemployable since his separation, due to the overall effect of his OCD, asthma, and obstructive sleep apnea. AR 30. According to Dr. Malagon,

> Mr. Timothy Hatmaker has been deemed 90% disabled from the Veterans Administration. This is from September 25, 2007. Despite this he has tried to earn gainful employment, but he has not been able to. He has been turned down repeatedly for different jobs. It is my medical impression that he cannot gain meaningful employment. He has multiple medical problems that include severe obsessive compulsive disorder, asthma, [and] obstructive sleep apnea that has not been well controlled. . . . He [also] has chronic positional vertigo that has been resistant to treatment. . . . [I]t is my impression that Mr. Hatmaker is completely and totally disabled to function and that the VA evaluation also corroborates this finding.

AR 30.

The Remand PDBR never mentioned this letter, and the court does not discern the reason for the omission.

On May 4, 2012, Mr. Hatmaker sought a PDBR review of his disability rating. He specifically requested a review of the overall effect of his OCD, asthma, and obstructive sleep apnea. AR 16-17. Mr. Hatmaker relied primarily on Dr. Malagon's letter as evidence of his long-term unemployability due to the severity of his health conditions. AR 16. In his application for review, Mr. Hatmaker explained:

> The PEB characterized [my] OCD as mild. However, this is belied by Dr.

Malagon's enclosed letter that states that [my] OCD is severe . . . . Dr. Malagon's letter points to the combined effect of [various] disabilities on [my] ability to work.  This suggests, and the PDBR should consider, that the combined effect of . . . sleep apnea, asthma, and OCD rendered [me] unfit to perform [my] duties.

AR 16-17.

While the Remand PDBR was not required to discuss each of Mr. Hatmaker's medical records, it was required to "review the complete case record."  DoDI 6040.44 encl. 3 ¶ 5.d.  It also was required to consider "[a]ll relevant evidence."  DoDI 1332.38 ¶ E3.P3.3.  The Remand PDBR attributed the deterioration of Mr. Hatmaker's OCD to temporary post-transition stress without considering the 2010 Malagon letter that addressed the duration of the decline in Mr. Hatmaker's condition.

Defendant does not dispute the Remand PDBR's failure to consider this evidence. Instead, defendant argues that the evidence would not have supported Mr. Hatmaker's claims:

> [The 2010 Malagon letter] does not state, as Mr. Hatmaker represents, that "[he has been] unable to gain meaningful employment since 2007 because of his medical conditions including 'severe OCD.'"  PMJUAR at 12 (citing AR 30).  Rather, it [reflects] the physician's opinion that Mr. Hatmaker will not be able to gain meaningful employment after January 21, 2010 (the date of the note) due to several medical conditions, including severe OCD.  AR 30. The note does mention the date September 25, 2007, but only as a recitation of the effective date of the DVA's 90 percent disability rating for Mr. Hatmaker.  Id.  However, even if this note did have probative value concerning Mr. Hatmaker's condition between 2007 and 2010 (it does not), this period is still entirely post-separation, which is not dispositive [of] the issue of fitness for duty.  Black, 28 Fed. Cl. at 184.

Def.'s Mot. 12.

Defendant's counsel's interpretation of this medical record, however, cannot be imputed to the Remand PDBR.  The law is well-settled that neither the court nor counsel may provide a reason for the Remand PDBR's failure to consider certain evidence that the Remand PDBR did not provide for itself.  See Bowman Transp., Inc., 419 U.S. at 285-86 (stating that the court "may not supply a reasoned basis for the agency's action that the agency itself has not given" (citing SEC v. Chenery Corp., 332 U.S. 194, 196 (1947)));  Burlington Truck Lines, 371 U.S. at 168-69 ("The courts may not accept . . . counsel's post hoc rationalizations for agency action; Chenery requires that an agency's discretionary order be upheld, if at all, on the same basis articulated in the order by the

agency itself." (citing <u>Chenery Corp.</u>, 332 U.S. at 196)).

Moreover, defendant's counsel's offered interpretation of the 2010 Malagon letter lacks proper support. Defendant's counsel asserts that Dr. Malagon mentions the date September 25, 2007 "only as a recitation of the effective date of the DVA's 90 percent disability rating." Def.'s Mot. 12. But a careful reading of the 2010 Malagon letter shows that Dr. Malagon found Mr. Hatmaker to be disabled due to his inability to function and to gain meaningful employment, as a result of multiple medical problems—including severe OCD, asthma, and uncontrolled sleep apnea. Dr. Malagon observed that his opinion of disability was corroborated by the VA's 90% disability rating of September 25, 2007. That Dr. Malagon referred to the VA's earlier disability rating as corroboration of his own findings undercuts defendant's argument that the 2010 Malagon letter supported a finding of prospective unemployability only.

ii.    The Remand PDBR's Reliance on Its Own Speculation

Mr. Hatmaker alleges that in its review, the Remand PDBR relied on its own view of the severity of his OCD in February 2008, and excluded contradictory evidence. He asserts that: "[t]he PDBR made a speculative finding that the "transition" to civilian life temporarily exacerbated [his] OCD, without considering . . . the record evidence demonstrat[ing] that his OCD [had] been chronic and severe and . . . kept him from working since 2007." Pl.'s Mot. 12-13.

At no point in discussing the deterioration of Mr. Hatmaker's OCD did the Remand PDBR reference any record support for its finding that temporary post-transition stress caused his deterioration. <u>See</u> AR 1023. The Remand PDBR relied solely on its own conjecture as to both the trigger for (post-transition stress) and the likely duration of (temporary) the worsening of Mr. Hatmaker's OCD condition in February 2008.

As is any fact finder, the Remand PDBR was expected to evaluate and weigh the evidence, and to exercise sound discretion in reaching its conclusions. <u>See, e.g.</u>, <u>Perkins v. Dep't of Veterans Affairs</u>, 273 F. App'x 957, 959 (Fed. Cir. 2008) ("[T]he evaluation of and weight to be given to . . . [the] evidence in the record are judgment calls that rest primarily within the discretion of the [Merit Systems Protection] Board." (quoting <u>Hall v. Dep't of the Treasury</u>, 264 F.3d 1050, 1060 (Fed. Cir. 2001))). But "the exercise of such discretion must be carried out in a way that is not arbitrary [and] capricious, or not in accordance with the law." <u>Buckley v. United States</u>, 57 Fed. Cl. 328, 355 (2003).

The Remand PDBR disregarded the prognosis of the VA psychiatrist who examined Mr. Hatmaker in February 2008. AR 171, 180. The ten-page report prepared by that examining psychiatrist included a thorough evaluation of Mr. Hatmaker's condition and a careful review of Mr. Hatmaker's earlier psychiatric examination for the MEB in June 2007. AR 172. The VA staff psychiatrist had knowledge of both Mr.

Hatmaker's history of OCD and his presenting condition when he made his findings in February 2008.  Moreover, given that his practice was limited to treating veterans, the VA staff psychiatrist is presumed to have been knowledgeable about the effects of a recent service separation and the prognostic impact, if any.

The VA staff psychiatrist did not indicate that Mr. Hatmaker's condition in February 2008 was a temporary exacerbation attributable to the stress of transition to civilian life.  See AR 175-79.  Rather, he signaled that Mr. Hatmaker's OCD had become problematic prior to his service separation stating that: "[Mr. Hatmaker's] impairments and behaviors became evident to those around him on active duty and resulted in poor performance reports."  AR 177.  The VA staff psychiatrist was not particularly optimistic about the likelihood of Mr. Hatmaker's improvement because "[t]he prognosis for chronic obsessive-compulsive disorder that is poorly responsive to treatment is guarded." AR 179.  Inexplicably, this record evidence received no attention from the Remand PDBR.

The MEB psychiatrist's note in June 2007 that Mr. Hatmaker exhibited an increase in OCD symptoms also failed to receive attention from the Remand PDBR.  The MEB psychiatrist wrote: "The [OCD] symptoms had all been present for 1-2 years to mild degree since stopping Zoloft in about 2005, not requiring treatment, but then steadily increased in intensity as he began having some medical problems (inguinal hernia, respiratory problems) and occupational stress (passed over for Maj[or] several times)."  AR 81.  At that time, the MEB psychiatrist found "no information in [Mr. Hatmaker's] history to suggest that his OCD could worsen rapidly to such a degree so as to result in significant impairments in judgment or reliability."  AR 83.

In June 2007, the symptoms of Mr. Hatmaker's OCD were more frequent, even though they were still only "mildly impairing."  AR 83.  By February 2008, however, those symptoms had overwhelmed Mr. Hatmaker.  AR 176.  The Remand PDBR was tasked with making a determination as to whether Mr. Hatmaker's OCD had rendered him unfit at the time of his separation, which occurred midway between his psychiatric examinations in 2007 and 2008.

The Remand PDBR does not appear to have evaluated the relevant evidence of the 2010 Malagon letter, the February 2008 VA psychiatric examination, and the June 2007 MEB psychiatric examination.  Instead, the Remand PDBR made, and relied on, its own finding that the transition to civilian life "may temporarily exacerbate a mental health condition," AR1023 (emphasis added), notwithstanding the lack of record evidence that Mr. Hatmaker had suffered such transitional stress.

"Under the substantial evidence rule, all of the competent evidence must be considered, . . . whether or not it supports the challenged conclusion."  Heisig, 719 F.2d at 1157 (citing Consolo, 383 U.S. at 620; Universal Camera Corp., 340 U.S. at 483, 490).

The court cannot substitute its judgment for that of the Remand PDBR, <u>Heisig</u>, 719 F.2d at 1156, and the court "will uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned," <u>Bowman Transp., Inc.</u>, 419 U.S. at 285-86. But, here the Remand PDBR has not disclosed its reasons for relying on its own conjecture and ignoring evidence that Mr. Hatmaker's OCD was worsening in June 2007, had become debilitating by February 2008, and had not improved by January 2010. The court is unable to discern why the Remand PDBR elected to disregard certain record evidence or elected to speculate as to the cause of Mr. Hatmaker's condition. Thus, the court remands this matter to the United States Department of Defense Physical Disability Board of Review to consider all the relevant evidence—to include the records referenced herein—in its evaluation of the overall effect of Mr. Hatmaker's OCD, asthma, and obstructive sleep apnea on his fitness at separation.

On remand, the PDBR is advised to consider carefully any use of negative evidence. In certain circumstances, negative evidence is admissible evidence. <u>See, e.g.</u>, <u>AZ v. Shinseki</u>, 731 F.3d 1303, 1315-18 (Fed. Cir. 2013) (discussing proper use of negative evidence as the absence of an occurrence where the presence of that occurrence would be expected). The Remand PDBR relied on the absence of specified occurrences to support its decision. For example, the Remand PDBR considered the fact that "there is no evidence from the record that at any time [Mr. Hatmaker] ever needed any ambulatory assistive device because of staggering, or ever suffered any consequence from staggering (such as injury)," as evidence that Mr. Hatmaker did not suffer from occasional staggering. AR 1021. The Remand PDBR, however, did not establish that either the use of an ambulatory assistive device or injuries would be expected in someone who suffered from occasional staggering. Such would be required for negative evidence.

IV.    Conclusion

Plaintiff's motion for judgment on the administrative record is **DENIED**. Defendant's cross-motion motion for judgment on the administrative record is **DENIED**.

Pursuant to its authority under 28 U.S.C. § 1491(a)(2) (2012), the court **REMANDS** this matter to the United States Department of Defense Physical Disability Board of Review for additional review, as discussed in this decision.

This case shall be **STAYED** pending remand.  <u>See</u> RCFC 52.2(b)(1)(C).  The remand shall last no longer than six months, RCFC 52.2(b)(1)(B), and the parties shall file joint status reports every ninety days informing the court of the status of the remand, RCFC 52.2(b)(1)(D).  **Accordingly, joint status reports shall be due no later than September 7, 2016 and December 6, 2016.**  "The results of the proceedings on remand are subject to this court's review," <u>Santiago v. United States</u>, 71 Fed. Cl. 220, 230 n.17 2006).

IT IS SO ORDERED.

<u>s/ Patricia E. Campbell-Smith</u>
PATRICIA E. CAMPBELL-SMITH
Chief Judge