# In the United States Court of Federal Claims

No. 13-719C

(E-Filed: March 1, 2018)

|  |  |  |
|---|---|---|
| TIMOTHY J. HATMAKER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Military Disability Retirement Pay; |
| v. | ) | Substantial Evidence Supports Board's |
| | ) | Denial of Relief on Second Remand. |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Jason E. Perry, Wellington, FL, for plaintiff.

Devin A. Wolak, with whom were Chad A. Readler, Principal Deputy Assistant Attorney General, Robert E. Kirschman, Jr., Director, Steven J. Gillingham, Assistant Director, United States Department of Justice Civil Division, Washington, DC, for defendant. Adam Frey, United States Air Force Litigation Division, of counsel.

## OPINION

CAMPBELL-SMITH, Judge.

The court has before it the parties' cross-motions for judgment on the administrative record. Familiarity with two prior remand opinions issued in this case is presumed. See Hatmaker v. United States, 127 Fed. Cl. 217 (2016) (Hatmaker II); Hatmaker v. United States, 117 Fed. Cl. 560 (2014) (Hatmaker I). Two issues are disputed in the parties' briefs before the court: (1) Whether the Physical Disability Board of Review (PDBR) properly left undisturbed plaintiff's 10% disability rating for vertigo; and (2) Whether the PDBR properly found that plaintiff, at the time of his separation from the United States Air Force, was not unfit for duty due to the combination of his Obsessive Compulsive Disorder (OCD), asthma and sleep apnea. The second issue focuses on the severity of plaintiff's OCD, rather than on the rating of other conditions regarding which there has been no allegation of error. Hatmaker II, 127 Fed. Cl. at 233.

The court also has before it plaintiff's motion to supplement the administrative record. The parties' motions have been fully briefed and are ripe for decision.[1] For the reasons set forth below, plaintiff's motion to supplement the administrative record is **DENIED**; plaintiff's motion for judgment on the administrative record is **DENIED**; and, defendant's cross-motion for judgment on the administrative record is **GRANTED**.

I.      Background[2]

   A.      Disability Rating by the Air Force

Mr. Hatmaker, then serving as a captain in the Air Force, was separated from service on September 24, 2007. ECF No. 12-2 at 1. Having been twice passed over for promotion to major, his separation from service was originally scheduled for May 2007. ECF No. 12-1 at 78. During separation proceedings, a number of Mr. Hatmaker's medical problems were reviewed to determine whether he should be separated for medical reasons. Hatmaker I, 117 Fed. Cl. at 563.

An informal Physical Evaluation Board (PEB) rated Mr. Hatmaker's "Vertigo, probably due to labyrinthitis," unfitting at 10%. ECF No. 12-1 at 38. His OCD, asthma and sleep apnea were noted to be potentially ratable and compensable conditions, but not ratable or compensable at the time of separation. Id. Because Mr. Hatmaker did not have a total compensable disability rating of 30% or more, he was ineligible for military disability retirement pay. See 10 U.S.C. § 1201(b)(3)(B) (2012). Mr. Hatmaker accepted the informal PEB's decision which was rendered on August 10, 2007. Compl., ECF No. 1 at 3. The Air Force separated Mr. Hatmaker in September 2007 for medical reasons (disability), and he received severance pay. ECF No. 12-2 at 1.

Mr. Hatmaker sought relief regarding the PEB's 10% disability rating from the PDBR in 2012. ECF No. 12-1 at 8. His request for relief was denied by the PDBR in

---

[1]      The briefing of the dispositive motions before the court includes: plaintiff's motion for judgment on the administrative record, ECF No. 75; defendant's cross-motion, ECF No. 85; plaintiff's response/reply, ECF No. 86; and defendant's reply, ECF No. 87. The briefing of the record supplementation issue includes: plaintiff's motion to supplement the administrative record, ECF No. 65; defendant's response, ECF No. 66; and plaintiff's reply, ECF No. 67.

[2]      All document references and page citations are to the electronic record preserved in the court's Case Management/Electronic Case Files (CM/ECF) system. The administrative record is found at ECF No. 12-1 through 12-9, ECF No. 41-1, and ECF No. 58. Plaintiff's proposed supplement to the administrative record is found at ECF No. 65-1.

2013.  ECF No. 12-1 at 1-7.  That same year he filed suit in this court challenging the PDBR's 2013 decision.

> B.    Disability Ratings by the Department of Veterans Affairs and the Social Security Administration

Soon after his honorable discharge, Mr. Hatmaker applied for veterans benefits. After some preliminary findings which were later modified, the Department of Veterans Affairs (VA) in 2009 rated the following disabling conditions, dating back to September 25, 2007, at a higher level than did the informal PEB:  (1) vertigo – 30%; (2) OCD – 10%; (3) asthma – 10%; and (4) sleep apnea – 50%.[3]  ECF No. 12-2 at 103-04.  Mr. Hatmaker's combined disability rating from the VA was 90% for September 2007, whereas the PEB had rated Mr. Hatmaker's unfitting conditions at 10% for that same time-frame.

Mr. Hatmaker also received two determinations regarding his employability.  In 2011, the Social Security Administration (SSA) determined that Mr. Hatmaker was disabled and unable to engage in substantial gainful activity, dating back to September 2007.  ECF No. 12-1 at 32-37.  In 2010 the VA found that Mr. Hatmaker was unable to work, dating back to November 16, 2009, the date the VA received his application for a determination of his "entitlement to individual unemployability."  ECF No. 12-2 at 106-08.  Thus, both the VA and the SSA have found that Mr. Hatmaker's health problems have denied him substantial gainful employment since he left the Air Force.

> C.    Remand Instructions from This Court

This court has twice remanded Mr. Hatmaker's claims to the PDBR to correct errors in the PDBR's analysis of the PEB's disability ratings in light of relevant evidence of record.  Hatmaker I reviewed the PDBR's 2013 decision and remanded Mr. Hatmaker's request for relief so that the PDBR could address certain errors in the PDBR's 2013 decision.  Hatmaker II reviewed the PDBR's 2015 response to the remand ordered by Hatmaker I.

For the court's goal of providing background for this opinion, the focus is on Hatmaker II, the second remand opinion.  Hatmaker II identified a particular set of errors for the PDBR to address in its third review of the PEB's disability ratings.  It is the

---

[3]    The VA also took into consideration other disabling health problems experienced by Mr. Hatmaker, which are of only tangential relevance to this suit.  These include: scarring – 10%; tendonitis – 10%; gastric/bowel issues – 10%; and kidney stone sequelae/bladder issues – 40%.  ECF No. 12-2 at 103-04.

PDBR's 2016 decision, responding to <u>Hatmaker II</u>, that is the subject of the parties' pending cross-motions for judgment on the administrative record.

One error identified in <u>Hatmaker II</u> was the categorical discounting of the probative value of statements Mr. Hatmaker made to his treating physicians regarding his vertigo symptoms. 127 Fed. Cl. at 228. Because the PDBR appeared to require confirming objective evidence of those symptoms for Mr. Hatmaker's statements to be given any probative weight, the PDBR committed legal error. <u>Id.</u> The court also required the PDBR to revisit its analysis of the evidence of "occasional staggering," and in particular to better explain how the records of a physical therapy evaluation on July 16, 2007 were assessed in this regard. <u>Id.</u> at 229-32. If occasional staggering was a feature of Mr. Hatmaker's vertigo in September 2007, he would be entitled to a 30% unfitting rating for vertigo, and also would be entitled to military disability retirement pay. <u>Id.</u> at 227 (citing 38 C.F.R. § 4.87 (2017)); <u>see also</u> 10 U.S.C. § 1201(b)(3)(B).

As for Mr. Hatmaker's OCD, <u>Hatmaker II</u> remanded this case to the PDBR so that it could reweigh all relevant evidence of OCD, including the "2010 Malagon letter, the February 2008 VA psychiatric examination, and the June 2007 [Medical Evaluation Board (MEB)] psychiatric examination." 127 Fed. Cl. at 237. The court also stated that the PDBR's speculation that "temporary post-transition stress" was a possible cause of aggravated OCD after September 2007 would not suffice to rebut record evidence to the contrary. <u>Id.</u> at 236-37. Finally, the court cautioned the PDBR that over-reliance on "negative evidence," <u>i.e.</u>, the absence of expected evidence in the record, could lead to error if the expectation as to the existence of such evidence was not well-founded. <u>Id.</u> at 237-38.

II.     Standards of Review

A.     RCFC 52.1

Rule 52.1 of the Rules of the United States Court of Federal Claims (RCFC) provides for judgment on the administrative record. To review a motion under RCFC 52.1, the court asks whether, given all the disputed and undisputed facts, a party has met its burden of proof based on the evidence in the record. <u>Bannum, Inc. v. United States</u>, 404 F.3d 1346, 1356 (Fed. Cir. 2005). The court must make fact findings where necessary. <u>Id.</u> The resolution of cross-motions filed under RCFC 52.1 is akin to an expedited trial on the paper record. <u>Id.</u>

B.     Decisions of Review Boards

The court does not review the issue before a board for correction of military records <u>de novo</u>; rather, this court "will not disturb the decision of the corrections board unless it is arbitrary, capricious, contrary to law, or unsupported by substantial evidence." <u>Chambers v. United States</u>, 417 F.3d 1218, 1227 (Fed. Cir. 2005) (citing <u>Haselrig v.</u>

<u>United States</u>, 333 F.3d 1354, 1355 (Fed. Cir. 2003)).  Pursuant to this standard, this court's role is limited, as follows:

> (T)he traditional role of the court on review is to determine not whether the claimant was unfit for service at the time of his release but rather whether the finding of the Secretary . . . that the serviceman was fit was so arbitrary, capricious or unsupported by evidence as to be contrary to the applicable principles of law.

<u>de Cicco v. United States</u>, 677 F.2d 66, 70 (Ct. Cl. 1982) (alterations in original) (citations and internal quotations omitted).

Plaintiff's burden is to show by "'cogent and clearly convincing evidence'" that the decision of the board fails this standard.  <u>Wronke v. Marsh</u>, 787 F.2d 1569, 1576 (Fed. Cir. 1986) (quoting <u>Dorl v. United States</u>, 200 Ct. Cl. 626, 633 (1973)).  Plaintiff must also overcome the presumption of regularity which attaches to the actions of the PDBR.  <u>See, e.g.</u>, <u>Melendez Camilo v. United States</u>, 642 F.3d 1040, 1045 (Fed. Cir. 2011) ("We . . . presume that the Correction Board performed its function according to the regulations and considered all of the [applicant's] records.") (citations omitted); <u>Richey v. United States</u>, 322 F.3d 1317, 1326 (Fed. Cir. 2003) (noting "the presumption of regularity that attaches to all administrative decisions" of the United States (citing <u>Impresa Construzioni Geom. Domenico Garufi v. United States</u>, 238 F.3d 1324, 1338 (Fed. Cir. 2001))); <u>Armstrong v. United States</u>, 205 Ct. Cl. 754, 762-63 (1974) (noting that "[p]resumption favors the validity of official military acts," including those of a military records correction board, absent evidence to the contrary) (citations omitted).

C.    Supplementation of the Administrative Record

In <u>Axiom Resource Management, Inc. v. United States</u>, 564 F.3d 1374 (Fed. Cir. 2009), the United States Court of Appeals for the Federal Circuit adopted a restrictive standard for supplementation of the administrative record.  In its elaboration of the standard, the appeals court favorably cited <u>Murakami v. United States</u>, 46 Fed. Cl. 731 (2000), <u>aff'd</u>, 398 F.3d 1342 (Fed. Cir. 2005).  <u>Axiom</u>, 564 F.3d at 1380.  The <u>Axiom</u> standard for supplementation of the administrative record is a direct quotation from <u>Murakami</u>, stating that "supplementation of the record should be limited to cases in which 'the omission of extra-record evidence precludes effective judicial review.'"  <u>Id.</u> (quoting <u>Murakami</u>, 46 Fed. Cl. at 735).  "The purpose of limiting review to the record actually before the agency is to guard against courts using new evidence to 'convert the "arbitrary and capricious" standard into effectively de novo review.'"  <u>Id.</u> (quoting <u>Murakami</u>, 46 Fed. Cl. at 735).

In military pay cases before this court, an alternative to supplementation of the administrative record is to remand the case to the corrections board whose decision is being reviewed, so that the board may render a decision on a complete record.  <u>E.g.</u>, <u>Frey</u>

v. United States, 112 Fed. Cl. 337, 348 (2013); Albino v. United States, 93 Fed. Cl. 405, 409 (2010); Riser v. United States, 93 Fed. Cl. 212, 218 (2010).  Probative evidence proffered by a military pay plaintiff to supplement the administrative record of board proceedings should, as a general rule, trigger a remand from this court to the corrections board.  See, e.g., Walls v. United States, 582 F.3d 1358, 1367-68 (Fed. Cir. 2009) ("'[T]he proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" (quoting Fla. Power & Light Co. v. Lorion, 470 U.S. 729, 744 (1985))).  Remand is not required when the material proffered to supplement the administrative record is not probative.  E.g., Holmes v. United States, 98 Fed. Cl. 767, 780 (2011).

III.    Analysis

    The court examines the propriety of the PDBR's 2016 decision which addressed the Hatmaker II remand from this court.  The court reviews, specifically, the PDBR's finding as to the severity of Mr. Hatmaker's OCD at the time of separation, and the PDBR's finding as to whether "occasional staggering" was a feature of Mr. Hatmaker's vertigo at that time.  In this type of case, the issue is not the severity of the claimant's disabilities at the time an application for relief is filed with a military records correction board – rather, the board must assess the severity of the service member's health condition at the time of separation.  See, e.g., Boraiko v. United States, 146 Ct. Cl. 814, 819 (1959) (holding that "the nature and degree of the disease [at the time of discharge] must be considered in order to determine eligibility for retirement for physical disability") (footnote omitted).

    The court cannot reweigh the record evidence pertinent to OCD and vertigo, because it is constrained by the "substantial evidence" standard of review.  See supra.  What the court might have determined if it weighed the evidence in the administrative record de novo is immaterial in this proceeding.  Plaintiff bears the burden of showing that the PDBR's 2016 decision was "arbitrary, capricious, contrary to law, or unsupported by substantial evidence."  Chambers, 417 F.3d at 1227.

    As for plaintiff's motion to supplement the administrative record, ECF No. 65, plaintiff urges the court to consider fifteen pages of additional medical and pharmaceutical records, ECF No. 65-1.  The court, however, reviews the PDBR's 2016 decision in light of the evidence that was before the board, and plaintiff concedes that none of the proffered documents were considered by the PDBR.[4]  Pl.'s Reply, ECF No.

---

[4]    It is unclear why plaintiff did not submit these materials to either the PDBR in 2012 or to this court in 2013, instead of attempting to supplement the administrative record in early 2017.  Every treatment or medication record submitted by plaintiff is dated in the 2007-08 time-frame, except for one treatment scheduled for the summer of 2010.  See ECF No. 65-1.  Evidence that could have -- and should have -- been timely

67 at 1.  Further, nothing in the documents presented by plaintiff shows that effective review of the PDBR's 2016 decision could not occur in the absence of these documents.  Because the Axiom standard has not been met here, plaintiff's motion to supplement the administrative record is **DENIED**.[5]  The court turns first to the PDBR's finding as to the severity of plaintiff's OCD in September 2007.[6]

      A.     OCD

      On the subject of Mr. Hatmaker's OCD, the PDBR adequately addressed each of the errors, or potential errors, identified by this court in Hatmaker II.  First, the board conducted an extensive review of the evidence relevant to Mr. Hatmaker's OCD that would assist in determining the severity of Mr. Hatmaker's OCD in September 2007.  ECF No. 58 at 3-12.  The board then weighed that evidence critically and rationally.  Id. at 12-17.  This is exactly what the court ordered in Hatmaker II.  See 127 Fed. Cl. at 237 ("Thus, the court remands this matter to the United States Department of Defense Physical Disability Board of Review to consider all the relevant evidence—to include the

---

submitted to a corrections board, but was not, may be excluded by this court.  E.g., Walls, 582 F.3d at 1368 (citing Brown v. United States, 396 F.2d 989, 998-99 (1968)).

[5]     To the extent that the materials proffered as a supplement to the administrative record could be considered to be probative evidence, the proper procedure, as a general rule, would be to remand this case to the PDBR so that it could reconsider its findings in light of these documents.  In the court's view, however, no probative value can be discerned in plaintiff's proposed supplement to the administrative record.  See infra.  Further, even if these records could be viewed as supplying probative evidence, plaintiff's failure to present them to the PDBR and his delay in presenting them to this court counsel that in this circumstance the exclusion of these documents, not a remand, is appropriate.  See supra note 4.

[6]     Plaintiff also raises a challenge to the PDBR's decision based on 38 C.F.R. § 4.16(b) (2017).  ECF No. 75 at 38-39.  Defendant responded that this new argument for entitlement appears not to have ever been presented to the PDBR, and only at a late hour to this court.  ECF No. 85 at 36.  Plaintiff's response/reply brief, ECF No. 86, does not address the government's contention that this is a new argument untimely raised.  The court has reviewed Mr. Hatmaker's application for relief from the PDBR, ECF No. 12-1 at 11-18, his complaint, ECF No. 1, and his first two motions for judgment on the administrative record, ECF Nos. 16 and 44, and finds no specific reliance on section 4.16(b).  Mr. Hatmaker's failure to advance this argument in earlier proceedings prevents plaintiff from doing so at this late date because this argument has been waived.  E.g., Metz v. United States, 466 F.3d 991, 999 (Fed. Cir. 2006) (citations omitted).

records referenced herein—in its evaluation of the overall effect of Mr. Hatmaker's OCD, asthma, and obstructive sleep apnea on his fitness at separation.").

There is evidence in the record supporting the PEB's zero rating for OCD at separation, just as there is evidence supporting Mr. Hatmaker's position that he should be awarded a higher rating for his OCD at separation. A conflict in evidence, however, will not sustain plaintiff's burden unless the board's weighing of that evidence was arbitrary, capricious or contrary to law. See, e.g., de Cicco, 677 F.2d at 72 (upholding a correction board's denial of relief, even where "there was conflicting medical evidence in the record, [because] there was substantial medical evidence supporting the Correction Board's finding that plaintiff was fit for military duty").

Based largely on Mr. Hatmaker's performance evaluations in the years leading up to his separation, his MEB psychiatric evaluation of June 13, 2007, and the clinicians' notes in various contemporaneous medical records for Mr. Hatmaker while he was serving in the Air Force, the board found strong and persuasive evidence that Mr. Hatmaker's OCD was largely controlled and not unfitting in September 2007. ECF No. 58 at 3-17. Against this burden, the board weighed, in particular, the assessment of the VA psychiatrist on February 2, 2008, as well as the brief mention of "severe" OCD in the January 21, 2010 letter written by Mr. Hatmaker's personal physician, Dr. Malagon. Id. at 12-16. Although reasonable minds might come to a different conclusion, the court finds nothing arbitrary or capricious in the PDBR's determination that Mr. Hatmaker's OCD, either alone or in concert with his asthma and sleep apnea, was not unfitting in September 2007. The court now turns to plaintiff's arguments criticizing the PDBR's weighing of the evidence as to the severity of Mr. Hatmaker's OCD in September 2007.[7]

### 1.    The VA Psychiatrist's Report

Mr. Hatmaker argues that the PDBR did not reasonably interpret the February 2, 2008 report following an examination conducted by a VA psychiatrist. ECF No. 75 at 28-31. The court cannot agree. The board discerned contradictions between that report and Mr. Hatmaker's service and medical records that were also relevant to the determination of the severity of Mr. Hatmaker's OCD in September 2007. ECF No. 58 at 7-11. The board also noted that there were significant differences between Mr. Hatmaker's presentation to clinicians at the VA during exams separated by only one week. Id. at 9-10. Having reviewed those records, and the PDBR's weighing of the

---

[7]    The court focuses on plaintiff's arguments which allege error in the PDBR's reasoning that might rise to the level of arbitrary or capricious decision-making. Because the court cannot weigh the record evidence de novo, e.g., de Cicco, 677 F.2d at 70 (citing Beckham v. United States, 392 F.2d 619, 622 (Ct. Cl. 1968)), the court will not specifically address plaintiff's arguments that merely disagree with the PDBR's conclusions as to the import of the evidence in the record.

evidence in those records, the court does not find that the PDBR acted arbitrarily or capriciously when it accorded less weight to the record of the VA psychiatric exam on February 2, 2008, and more weight to Mr. Hatmaker's medical and service records from the Air Force, and, in particular, to the MEB psychiatric exam of June 13, 2007.

      2.     Negative Evidence

Mr. Hatmaker argues that the board relied excessively and unreasonably on negative evidence, i.e., the absence of specific evidence in the record, for its conclusions as to the severity of plaintiff's OCD at the time of his separation from the Air Force. ECF No. 75 at 31-37. Plaintiff points to the board's discussion of a number of "missing" items in the record: (1) the omission of OCD on Mr. Hatmaker's list of health conditions limiting his ability to do his job in the Air Force; (2) the lack of specific workplace accommodations attributed to OCD in his service records; (3) the lack of pharmaceutical records showing consistent use of medications to combat his OCD in the 2007-08 time-frame; (4) the dearth of any medical records showing that Mr. Hatmaker sought or received mental health treatment for OCD soon after he left the Air Force; and, (5) the fact that Mr. Hatmaker did not appeal the VA's relatively low disability rating of his OCD. Id. As the court reads the PDBR's decision, however, its analysis is largely founded on a comparison of psychiatric examination records pre- and post-separation, in light of extensive medical and service records that largely pre-date separation. Substantial evidence in those records supports the board's view that Mr. Hatmaker's OCD was not uncontrolled or unfitting as of September 2007.

The role of negative evidence in the PDBR's decision was relatively minor and, in the court's view, such reliance was unobjectionable overall. The board's assumptions as to the significance of negative evidence were rational. For example, if a veteran does not seek treatment for OCD soon after separation, that is one piece of evidence that could be probative of the severity of the veteran's OCD at that point in time. Given the limited role negative evidence played in the board's analysis, the court finds that the board's assessment of Mr. Hatmaker's OCD was not arbitrary or capricious.[8]

Lastly, plaintiff states that the PDBR's reliance on Mr. Hatmaker's performance evaluations and other service records was inappropriate. Because the PDBR in its analysis cited glowing reviews of Mr. Hatmaker's work performance, which contained no

---

[8]     To the extent that the board may have made a factual error as to whether Mr. Hatmaker was medication-compliant for his OCD condition in 2007-08, an issue raised in plaintiff's motion to supplement the administrative record, the rationality of the board's analysis of Mr. Hatmaker's OCD rating is unaffected. Whether or not Mr. Hatmaker was medication-compliant for his OCD condition in 2007-08, the PDBR rationally weighed relevant medical and service records to determine that Mr. Hatmaker's OCD, in combination with his asthma and sleep apnea, was not unfitting in September 2007.

mention of OCD, plaintiff argues that this is "another example of the PDBR inappropriately using negative evidence." ECF No. 75 at 33. The court cannot agree. The PDBR rationally considered both medical records and performance evaluations to determine whether Mr. Hatmaker's OCD was unfitting. Successful work performance is probative evidence, not negative evidence, in this context.

### 3.    Dr. Malagon's Letter of January 21, 2010

Plaintiff asserts that the PDBR did not accord "credence or proper consideration" to the portion of Dr. Malagon's January 21, 2010 letter that opined on the topic of Mr. Hatmaker's OCD. ECF No. 75 at 38. The relevant text of the letter is quoted in Hatmaker II. 127 Fed. Cl. at 235. The court finds that the PDBR's weighing of the probative value of Dr. Malagon's letter was reasonable. See ECF No. 58 at 16 (finding conflicts with more contemporaneous records which detracted from the weight that should be accorded Dr. Malagon's description of plaintiff's OCD). Plaintiff has not shown that the PDBR's analysis of Dr. Malagon's letter was arbitrary or capricious.

### 4.    Plaintiff's Burden on OCD Rating

Having considered all of the record evidence and the parties' arguments, the court concludes that the PDBR's 2016 decision survives review as to its affirmance of the disability rating assigned by the PEB to Mr. Hatmaker's OCD, either alone or in concert with his asthma and sleep apnea. The court has also considered whether the medical and pharmaceutical records proffered by plaintiff in his motion to supplement the administrative record, ECF No. 65-1, have any probative value as to the severity of Mr. Hatmaker's OCD in September 2007. The court concludes that these records have no probative value in light of the thorough and reasoned analysis conducted by the PDBR as to the severity of Mr. Hatmaker's OCD, an analysis which is supported by substantial record evidence. Plaintiff has not met his burden to overturn the PDBR's affirmance of the PEB's rating of his OCD at the time of separation.

### B.    Vertigo

On the subject of Mr. Hatmaker's vertigo, the PDBR adequately addressed each of the errors identified by this court in Hatmaker II. Instead of categorically discounting Mr. Hatmaker's statements to his medical providers regarding his vertigo, and instead of requiring confirming objective evidence before such statements would be credited, the board weighed Mr. Hatmaker's statements along with other record evidence. First, the board referenced 38 C.F.R. § 4.6 (2017) ("Every element in any way affecting the probative value to be assigned to the evidence in each individual claim must be thoroughly and conscientiously studied."). ECF No. 58 at 25.

The PDBR then proceeded to discuss how Mr. Hatmaker's statements that were recorded by his medical providers were considered along with other evidence:

The Board also assessed the probative weight of evidence . . . including the relative probative weight of statements made by [Mr. Hatmaker] during examinations and the evidence of medical examinations and testing.

The Board cannot determine that a [claimant's] lay statements lack credibility solely because there is no corroboration by contemporaneous medical records. However, the Board can make credibility determinations by comparing lay statements made at the time of examinations with prior records, by considering consistency with objective medical evidence, and by weighing the absence of contemporary medical evidence against lay statements.

Id. The board acknowledged that Mr. Hatmaker's statements to his clinicians concerning his vertigo could, if unrebutted by other evidence, support a 30% unfitting rating for vertigo. Id. at 27.

The record shows that the PDBR employed this analytical framework rationally and consistently. The board conducted an extensive review of the record, and included in its consideration the Dr. Malagon letter of January 21, 2010, and the physical therapy evaluation notes of July 16, 2007. ECF No. 58 at 17-31. Mr. Hatmaker's statements to clinicians were weighed against all of the other evidence relevant to his vertigo. Id.

Given the presumption of regularity that attaches to the actions of a military records correction board, see Melendez Camilo, 642 F.3d at 1045, the court finds, on this record, that the PDBR obeyed the instructions of Hatmaker II. Specifically, the court finds that the PDBR corrected the errors identified by the court when the board considered the evidence relevant to Mr. Hatmaker's vertigo, and in particular, when the board examined the crucial issue of whether "occasional staggering" was a feature of Mr. Hatmaker's vertigo in September 2007. The board's review of the PEB's 10% unfitting rating for vertigo is rational, thoroughly explained and supported by substantial evidence. The court turns to plaintiff's allegations of error regarding the "occasional staggering" issue, which challenge the board's determination that Mr. Hatmaker did not experience occasional staggering as part of his vertigo condition at the time of his separation from the Air Force in September 2007.[9]

---

[9]     The court again limits its discussion to allegations of error which might rise to the level of arbitrary or capricious decision-making, and does not address plaintiff's arguments which merely disagree with the board's weighing of relevant evidence. See supra note 7.

### 1.    The PDBR's Definition of "Occasional Staggering"

The board developed a working definition for "occasional staggering," a term undefined in regulation, that addressed both the required frequency of "staggering" and the physical manifestations of "staggering."  ECF No. 58 at 26.  The board's working definition was informed by the disability ratings context in which the term "occasional staggering" occurs, where the rating measures the impact of a health condition on the claimant's ability to earn an income in a civil occupation.  Id. (citing 38 C.F.R. § 4.1 (2017)).  Plaintiff argues that the definition adopted by the PDBR set too high a bar for "occasional staggering."  ECF No. 75 at 13-14; ECF No. 86 at 7-9.

The working definition of "occasional staggering" formerly used by the PDBR was discussed in Hatmaker II.  127 Fed. Cl. at 231.  The court specifically endorsed the PDBR's definition of the physical manifestations of staggering, stating that the board "reasonably interpreted the term staggering."[10]  Id.  Upon remand, however, the court instructed the PDBR that it should not construe "occasional" to mean "regular or constant."  Id.  A better definition of "occasional" was provided by the court:  "either occurring from time to time, or infrequently or irregularly."  Id.

Plaintiff argues that a statement in the PDBR's 2016 decision shows that the board impermissibly strayed from the court's guidance as to the meaning of "occasional," as that word is used in this context to modify "staggering."  ECF No. 75 at 13-14; ECF No. 86 at 7-9.  The statement in question, when isolated from the paragraph in which it occurs, reads:

> While a rare occurrence of imbalance causing staggering in the Board's assessment does not cause an impairment in an average civil occupation, occasional staggering on a more regular basis certainly can.

---

[10]    Staggering's physical manifestations are briefly described as "unsteadiness during walking or on standing, or reeling from side-to-side (as in 'tottering')."  Hatmaker II, 127 Fed. Cl. at 231 (citation and internal quotations omitted).  The PDBR noted that staggering, which can be observed by a clinician, has the following attributes:

> Staggering develops as a condition causing dizziness (such as labyrinthitis) becomes severe enough to result in body sway that exceeds the limit of normal postural stability while standing or walking and requires the quick movement of the legs and feet out of the normal position to avoid falling. When the compensatory movements of the legs and feet (staggering) are not adequate to maintain balance, a fall results.

ECF No. 58 at 26 (footnote omitted).

ECF No. 58 at 26.  For context, the court notes that the PDBR began its explication of "occasional" by citing a dictionary definition:  "sometimes, irregular or infrequent intervals."  Id.  Also, again for context, as a transition from the dictionary definition of "occasional" to the discussion of "occasional staggering" as an occupational impairment, the board described its task as "consider[ing] whether there was occasional staggering which interfered with occupational functioning."  Id.

When the paragraph is read as a whole, the court finds no indication that the PDBR elevated the standard for "occasional staggering" so that its interpretation of the term was unreasonable.  Further, the court finds no violation of the instructions provided to the board by this court in Hatmaker II.  Finally, the court notes that even when the sentence highlighted by plaintiff is read in isolation, that statement simply shows that the PDBR considered "a rare occurrence of imbalance causing staggering" to fall short of the requirement for "occasional staggering," which, in this case, would have qualified Mr. Hatmaker for a 30% unfitting rating for vertigo.  This is not an unreasonable analytical stance.  Because plaintiff has not shown that the PDBR conducted its review using an improper legal standard, this challenge to the PDBR's 2016 decision must be rejected.

> 2.     The PDBR's Evaluation of Evidence of Vertigo Symptoms, Generally

Mr. Hatmaker raises a number of challenges to the PDBR's weighing of record evidence.  In plaintiff's view, the preponderance of the evidence compels a finding that his vertigo in September 2007 included "occasional staggering" as a feature.  The court restates its finding that the PDBR's conclusions as to "occasional staggering" are supported by substantial evidence and cannot be disturbed on the ground that another fact-finder might not concur with the board as to the preponderance of the evidence on this issue.

Plaintiff raises two specific concerns, however, which are framed as allegations that the board committed legal error in its consideration of record evidence.  First, plaintiff argues that the board ignored evidence of unsteadiness or difficulty in standing/walking that favored plaintiff's position.  Second, plaintiff contends that the board categorically rejected the probative value of Mr. Hatmaker's statements to his clinicians.  The court addresses these concerns in turn.

> a.     Evidence of Unsteadiness

Plaintiff argues that evidence of unsteadiness and difficulty with walking or standing are sufficient evidence of staggering.  See ECF No. 86 at 11 ("Mr. Hatmaker suffered from unsteadiness, which equates to staggering.").  Further, plaintiff argues that there was enough evidence of unsteadiness and difficulty with walking or standing to establish "occasional staggering" at the time of separation.  ECF No. 75 at 15 ("The three instances cited by the PDBR where providers documented problems with unsteadiness,

dizziness, and problems with walking show[] that Mr. Hatmaker, at the time of his separation, suffered from 'occasional staggering' and is due a 30% rating for his vertigo."). The flaw in plaintiff's argument is that the PDBR could, and did, reasonably make a distinction between the physical manifestations of staggering and the less-specific notations of unsteadiness and difficulty with walking or standing in Mr. Hatmaker's medical records. ECF No. 58 at 26-27. The court, after a careful review of the PDBR's weighing of record evidence (which includes notations of unsteadiness and difficulties with walking or standing), finds that the PDBR rationally concluded that this evidence fell short of establishing that Mr. Hatmaker experienced "occasional staggering" at the time of separation.

b.      Consideration of Mr. Hatmaker's Statements to Clinicians

Plaintiff argues that the PDBR, despite the court's instructions in Hatmaker II, continued to categorically reject Mr. Hatmaker's statements to clinicians as evidence of "occasional staggering." See ECF No. 75 at 21 (alleging that the PDBR continued to require objective confirming evidence before giving any probative weight to Mr. Hatmaker's statements to clinicians). The court cannot reconcile this argument with the PDBR's 2016 decision. First, the board noted the court's instruction that Mr. Hatmaker's statements to clinicians had probative weight. ECF No. 58 at 25. Second, the PDBR explicitly outlined an analytical framework wherein Mr. Hatmaker's statements to clinicians would be considered, along with other evidence. Id. Third, the board discussed numerous medical records where it was noted that Mr. Hatmaker complained of staggering, unsteadiness, balance problems, or difficulties with walking, standing or driving. Id. at 25-31. On this record, the PDBR did not categorically reject Mr. Hatmaker's statements to clinicians, and did not violate the court's instructions as to the weight to be accorded those statements.

Plaintiff also suggests that much of the evidence relied upon by the PDBR was inconclusive and could not outweigh Mr. Hatmaker's statements to clinicians regarding the symptoms of his vertigo condition. ECF No. 75 at 21-25. While reasonable minds could disagree as to the weight accorded to various elements of the record evidence by the PDBR, substantial evidence in the record supports the board's conclusion that "occasional staggering" was not a feature of Mr. Hatmaker's vertigo at the time of separation. It is important to note that the PDBR generally found that medical tests and clinician observations were more probative than the evidence of staggering that might be discerned in Mr. Hatmaker's statements to clinicians. ECF No. 58 at 25-31. Under the substantial evidence standard, the PDBR's weighing of Mr. Hatmaker's statements to clinicians regarding his vertigo was rational and adequately supported by evidence contained in the administrative record.

3.      Physical Therapy Notes of July 16, 2007

The parties strongly disagree as to the reasonableness of the PDBR's consideration of a physical therapist's notes from July 16, 2007.  Plaintiff even argues that the PDBR categorically "rejected" this medical record as evidence.  ECF No. 86 at 12-13.  The administrative record shows, however, that the PDBR followed the court's instruction in Hatmaker II that the board review and pay additional attention to the physical therapist's notes of July 16, 2007.  See ECF No. 58 at 26, 28-29.  These notes discuss the physical therapist's examination of Mr. Hatmaker, physical therapy treatment for vertigo which occurred on that date, and recommendations for further treatment for vertigo.  ECF No. 12-3 at 53-55.

The question, then, is whether the PDBR's interpretation of the physical therapist's notes renders its findings on the topic of "occasional staggering" arbitrary or capricious.  The court finds no such flaw in the record.  The physical therapist's notes reflected his observation of Mr. Hatmaker's difficulty with walking on both even and uneven ground, and included an overall assessment that Mr. Hatmaker was experiencing severe limitations in the independent activities of daily living, work and recreation due to his vertigo.  Id.  Both of these features of the physical therapist's notes are noted by the PDBR.  ECF No. 58 at 28-29.

The PDBR, however, found that records of other medical examinations and clinician observations outweighed the physical therapist's notes which might otherwise be construed as a report of staggering by Mr. Hatmaker.  Id. at 26-31.  The PDBR considered the totality of the medical records which might be relevant to the topic of "occasional staggering" and concluded that dizziness, but not occasional staggering, characterized Mr. Hatmaker's vertigo in September 2007.[11]  Id. at 31.  The court finds that the PDBR's consideration of the evidence contained in the July 16, 2007 physical therapy notes was neither arbitrary nor capricious.

4.      Dr. Malagon's Letter of January 21, 2010

Plaintiff asserts that the PDBR gave only cursory attention to the Malagon letter when it reviewed evidence of the symptoms of Mr. Hatmaker's vertigo as of September 2007.  ECF No. 75 at 25.  Specifically, plaintiff alleges that the board considered Dr. Malagon's clinical opinions to be, essentially, "not probative," and "rejected" this evidence when conducting the "occasional staggering" analysis.  Id. at 25-26.  In

---

[11]     The board considered the results of a number of tests, as well as clinician observations as to Mr. Hatmaker's gait and his response to the prescribed medication for the treatment of his vertigo.  ECF No. 58 at 26-31.  The PDBR's reliance on such evidence was rational.

plaintiff's view, the board's consideration of Dr. Malagon's January 21, 2010 letter was arbitrary and capricious.  Id. at 26-27.

There are only two elements of the Malagon letter that address vertigo either directly or indirectly.  First, Dr. Malagon states that Mr. Hatmaker, as of January 2010, "has chronic positional vertigo that has been resistant to treatment."  ECF No. 12-1 at 30. Second, Dr. Malagon opines that Mr. Hatmaker is "completely and totally disabled," and has been rated as 90% disabled since September 25, 2007.  Id.  The court notes that the Malagon letter contains no mention of staggering or the frequency of staggering that might have been a feature of Mr. Hatmaker's vertigo in September 2007, nor does this letter specifically address balance problems, unsteadiness, gait or difficulties with walking or standing.

The PDBR found that the Malagon letter "provides no new information" and noted that this letter was written much later than contemporaneous medical records that had been considered by the board.  ECF No. 58 at 31.  The board also discerned inconsistencies between Dr. Malagon's description of Mr. Hatmaker's disabling conditions and the VA's observations of those same conditions in January 2008.  Id.  On this record, the court finds that the PDBR reasonably evaluated Dr. Malagon's letter for its probative weight in determining whether Mr. Hatmaker's vertigo included occasional staggering in September 2007.[12]  In other words, the board's assessment of the evidence contained in the Malagon letter was neither arbitrary nor capricious.

5.     Plaintiff's Burden on Vertigo Rating

Having considered all of the record evidence and the parties' arguments, the court concludes that the PDBR's 2016 decision, which affirmed the 10% disability rating assigned by the PEB to Mr. Hatmaker's vertigo, survives review.  The PDBR thoroughly considered evidence from Mr. Hatmaker's medical records, including the July 16, 2007 physical therapy examination and Dr. Malagon's January 21, 2010 letter, and rationally concluded that occasional staggering was not a feature of Mr. Hatmaker's vertigo in

---

[12]     Plaintiff argues that the PDBR's weighing of Dr. Malagon's report of Mr. Hatmaker's vertigo was factually unsound in light of additional medical and pharmaceutical records not before the board.  ECF No. 75 at 26.  The records proffered by plaintiff, however, do not undermine the PDBR's conclusion that Dr. Malagon offered no new information on the topic of "occasional staggering," that his January 2010 letter did not rebut more contemporaneous medical records considered by the board, and that Dr. Malagon's opinions were inconsistent, in some respects, with the records of the January 2008 VA medical examination.  The documents in plaintiff's proposed supplement to the administrative record have no probative value in light of the substantial evidence which supports the limited weight accorded to Dr. Malagon's January 21, 2010 letter by the PDBR.

September 2007.  Under the standard of review applicable here, plaintiff has not met his burden to overturn the PDBR's affirmance of the PEB's 10% unfitting rating for Mr. Hatmaker's vertigo at the time of his separation from the Air Force.

IV.  Conclusion

For the reasons stated in this opinion, the PDBR's 2016 decision has not been shown to be "arbitrary, capricious, contrary to law, or unsupported by substantial evidence."  <u>Chambers</u>, 417 F.3d at 1227.  The court also finds that supplementation of the administrative record, as proposed by plaintiff, is not appropriate.  Accordingly,

(1)   Plaintiff's motion to supplement the administrative record, ECF No. 65, is **DENIED**;

(2)   Plaintiff's motion for judgment on the administrative record, ECF No. 75, is **DENIED**;

(3)   Defendant's cross-motion for judgment on the administrative record, ECF No. 85, is **GRANTED**;

(4)   The clerk's office is directed to **ENTER** final judgment for defendant **DISMISSING** plaintiff's complaint, with prejudice; and

(5)   No costs.

IT IS SO ORDERED.

s/ Patricia Campbell-Smith
PATRICIA CAMPBELL-SMITH
Judge